UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

| | |
|---|---|
| JANE DOE, individually and on behalf of her minor daughter, SUSAN DOE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH A. LADAPO, *in his official capacity as Florida's Surgeon General of the Florida Department of Health*, et al.,<br><br>*Defendants*. | Case No. 4:23-cv-00114-RH-MAF |

## PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

Plaintiffs, by and through their undersigned counsel, respectfully move this this Court for an Order permitting Plaintiff Susan Doe's treating provider ("Dr. Roe") to file a declaration as an exhibit to Plaintiffs' Motion for Preliminary Injunction under pseudonym to protect their identity from public disclosure. The declaration is an attachment to Jane Doe's declaration establishing the need for medical treatment of Plaintiff Susan Doe.

Plaintiffs are transgender adolescents, and the parents of transgender adolescents, who are challenging the Florida Administrative Rules prohibiting

medical providers from prescribing medications for the treatment of gender dysphoria. (Amended Compl., Doc. 29). The Florida Board of Medicine's ban, Rule 64B8-9.019, Fla. Admin. Code, and the Florida Board of Osteopathic Medicine's ban, Rule 64B15-14.014, Fla. Admin. Code ("Bans"), were promulgated pursuant to the Boards of Medicine and Osteopathic Medicines' statutory authority to take disciplinary action against physicians licensed in the state of Florida. Fla. Stat. § 459.015(1)(z) (2022) ("*Grounds for disciplinary action; action by the board and department*") and § 456.072(2) (2022) ("*Grounds for discipline; penalties; enforcement.*").

Plaintiffs seek leave for Dr. Roe, the treating provider of Plaintiff Susan Doe, to proceed under pseudonym to protect Dr. Roe from undue harassment, violence, and retaliation and to protect their privacy interests and the privacy and safety of their patients, and to avoid disciplinary actions under the transgender medical bans during the pendency of this litigation. Dr. Roe fears that that if they use their own name, they will become subject to harassment, physical violence, and retaliation. As such, Dr. Roe's privacy rights outweigh the presumption of openness in federal courts because of the danger Dr. Roe would face should their name or other personally identifying information be made public. Moreover, Defendants will face no prejudice if Dr. Roe is permitted to proceed under pseudonym.

**MEMORANDUM OF LAW**

Plaintiffs seek permission to use a pseudonym for Dr. Roe, whose provision of medical care for transgender children will be described in their statement in support attached to the Declaration of Plaintiff Jane Doe. Dr. Roe is a licensed physician in the State of Florida and is Board Certified by the American Board of Pediatrics in Pediatrics. As discussed herein, the disclosure of Dr. Roe's identity, coupled with the fact that Dr. Roe provides care for transgender children, would leave Dr. Roe susceptible to personal and professional attacks from the public and the government.

Federal Rule of Civil Procedure 26 permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Accordingly, this Court has the discretion to allow Dr. Roe to proceed using a pseudonym. *See Fla. Action Committee, Inc. v. Seminole Cnty.*, 2016 WL 6080988, at *2 (M.D. Fla. 2016); *Oldaker v. Giles*, 2021 WL 3412551, at *4 (M.D. GA 2021) (permitting twenty, non-party witnesses to proceed under pseudonym). Courts should consider several factors in making a determination in allowing a party or witness to proceed under pseudonym. *Carrizosa v. Chiquita Brands, Int'l*, 965 F.3d 1238, 1247 (11th Cir. 2020). Courts should "carefully review *all* the circumstances of a given case and then decide" whether to permit a person to appear under pseudonym. *Olkaker*, 2021 WL 3412551, at *2 (emphasis in original) (internal quotations omitted). These considerations include

whether a witness fears violence, harassment, or retaliation if they testify using their name. *See id.* at *3; *see also United States v. Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012) (permitting a witness to testify under pseudonym where the witness "explained a heightened level of danger" which he would be subject to if he testified under his own name). Moreover, "[t]he appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source." *United States v. Celis*, 608 F.3d 818, 832 (D.C. Cir 2010), *cert. denied* 131 S. Ct. 620 (2010) (holding that there was no Confrontation Clause violation by permitting witnesses to testify under pseudonyms).

Further, Plaintiffs are "challenging government activity." *Chiquita Brands*, 965 F.3d at 1247. Where government activity is challenged, "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant," while the plaintiff typically "represents a minority interest (and may be subject to stigmatization)." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). The government activity being challenged in this litigation, and the named Defendants in this lawsuit, have direct authority over the regulation of Dr. Roe's license and practice of medicine.

Plaintiffs in this case have challenged the rules promulgated by Defendants that prohibit medical providers from prescribing medications for the treatment of

gender dysphoria. Rule 64B8-9.019, Fla. Admin. Code (March 16, 2023) and Rule 64B15-14.014, Fla. Admin. Code (March 28, 2023). Defendants promulgated these rules, the Bans, pursuant to the Defendant Boards of Medicine and Osteopathic Medicines' ("Defendant Boards") statutory authority to take disciplinary action against physicians licensed in the state of Florida. Fla. Stat. § 456.072(1) (2022), *Grounds for discipline; penalties; enforcement.* If Defendant Boards find a physician to be in violation of the Bans, the physician can be subjected to a range of penalties, including but not limited to permanent revocation of license, restriction or suspension of license, imposition of a fine up to $10,000 for each separate offense, and corrective action, among other penalties. *Id.* § 456.072(2).

Minor Plaintiffs and Parent Plaintiffs have moved this court to proceed pseudonymously because Minor Plaintiffs' private medical history and experience as transgender minors will be rendered public through this litigation, and to protect them from undue harassment, discrimination, and even violence because Minor Plaintiffs are transgender, and Parent Plaintiffs are affirming parents of transgender adolescents. Courts have recognized that a person's transgender status is a very intimate, private matter. *See, e.g.*, *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) ("The excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate"); *Foster v. Andersen*, No. 18-2552- DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25,

2019) ("[T]he disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria."); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 333, 333 (D.P.R. 2018); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015); *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992). The Eleventh Circuit has observed that "[c]ourts have permitted plaintiffs to proceed anonymously in cases involving mental illness, homosexuality, and transsexuality" because "the social stigma attached to the plaintiff's disclosure was found to be enough to overcome the presumption of openness in court proceedings." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). Customarily, Court have allowed both minors and their guardians to proceed under pseudonym where the interests of minor children are at stake. *See, e.g.*, *Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 872 (7th Cir. 1997) (observing that fictitious names are allowed when necessary to protect children's privacy); *Stegall*, 653 F.2d at 186 (permitting minor children and their mother to use fictitious names as minor children are more vulnerable to potential harassment or violence against the family); *Doe v. Banos*, 713 F. Supp. 2d 404, n. 1 (D. N.J. 2010) (stating that the pseudonym of father and daughter was "used to protect the identity of a fifteen year-old minor."); *Sims v. Lakeside Sch.*, No. 06-1412 RSM, 2007 WL 4219347, at *1 (W.D. Wash. Nov. 28, 2007) (finding that minor names and the names of the parents

deserved use of pseudonyms to protect the interests of the minor children involved and that there is a strong public policy in favor of protecting the identity of children).

For similar reasons, Plaintiffs seek to allow Dr. Roe to proceed anonymously to protect Dr. Roe's privacy interests and the privacy and safety of Dr. Roe's patients. Like the Minor Plaintiffs and Parent Plaintiffs, Dr. Roe faces a real risk of ridicule, harassment, and even violence if they are not permitted to proceed anonymously. While they are not transgender, by filing a declaration and participating as a non-party witness in this suit, they have revealed their personal beliefs and practices regarding a highly sensitive subject matter that may evoke a hostile public reaction. *See Stegall,* 653 F.2d at 186 (anonymity may be justified where filing suit may reveal "personal belief and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior"); *see also* Fla. S.B. 254, "Treatments for Sex Reassignment," (2023) (creating Section 456.52(4)(b), subjecting any physician who provides treatment for gender dysphoria to minors "commits a felony of the third degree."). In addition, Dr. Roe has serious concerns about the privacy and safety of their patients, some of whom are transgender. These concerns further underscore the need for anonymity for Dr. Roe.

Dr. Roe's identity should be protected because Dr. Roe's identification poses a risk of retaliatory physical harm and harassment. Dr. Roe reasonably fears that if their identity was to become public, Dr. Roe would face a serious risk of physical

7

violence by the public. Dr. Roe's clinic, like many clinics in Florida and across the country, has already received threatening correspondence because the clinic provides care for transgender children. These threats are not isolated events; across the nation, doctors and clinics are being targeted for offering care to transgender youth. For example, in September 2022, Catherine Leavy was arrested for making a bomb threat to Boston Children's Hospital[1] after the right-wing Twitter account, @Libs of Tiktok, made a false claim about the hospital performing hysterectomies on young girls. The hospital received several more bomb threats through November 2022.[2] In connection with the same false claim, a user of the message board, TheDonald, wrote under a copy of the hospital's statement that it is "[l]ong past time to start executing these 'doctors.'"[3] In December 2022, the FBI arrested Matthew

---

[1] Press Release, U.S. Attorney's Office, District of Mass., *Westfield Woman Indicted for Alleged Hoax Bomb Threat Made to Boston Children's Hospital* (Sept. 15, 2022) https://www.justice.gov/usao-ma/pr/westfield-woman-indicted-alleged-hoax-bomb-threat-made-boston-childrens-hospital.

[2] Rick Sobey, *Canadian Man Arrested in Connection to Bomb Threats at Boston Children's Hospital, Other Boston-Area Sites*, BOSTON HERALD (Oct. 24, 2022, 2:18PM), https://www.bostonherald.com/2022/10/24/canada-man-arrested-in-connection-to-bomb-threats-at-boston-childrens-hospital-other-boston-area-sites/; Susannah Subborough, *Boston Children's Hospital Received Another Bomb Threat, Police Say All Clear*, BOSTON.COM (Nov. 16, 2022), https://www.boston.com/news/crime/2022/11/16/boston-childrens-hospital-bomb-threat-gems-program-gender-multiservices-anti-trans/.

Thankfully, while no hospital has been bombed yet for providing transgender care, this is a situation analogous to the 1990's bombings of abortion clinics by Eric Rudolph, better known as the Olympic Bomber. In his guilty plea, Rudolph said that "an attempt to force society to accept and recognize this behavior should be met with force if necessary." CNN, *Rudolph Reveals Motives* (Apr. 19, 2005, 5:25PM), https://www.cnn.com/2005/LAW/04/13/eric.rudolph/.

[3] David Gilbert, *Far-Right Extremists Are Threatening to 'Execute' Doctors at a Children's Hospital*, VICE NEWS (August 17, 2022, 8:38AM), https://www.vice.com/en/article/epzv9a/libsoftiktok-trans-children-boston-hospital.

Lindner for threatening to kill a physician at the Fenway Institute because she was caring for children with gender dysphoria.[4] Fox News has made inflammatory comments regarding doctors who provide care for transgender children. On a broadcast, Tucker Carlson said he "called UCLA's hospital . . . and they'd be happy to mutilate our child."[5] Not only does Dr. Roe fear for their own safety, as a parent Dr. Roe also fears for the safety of their family. An anonymous user on the message board, 4Chan, made the below post about doctors who provide gender affirming care:



Further, more than twenty hospitals have had to make changes to their websites describing the provision of gender-affirming care, including scrubbing

---

[4] Press Release, U.S. Attorney's Office, District of Mass., Texas Man Charged with Threatening Doctor Affiliated with the National LGBTQIA+ Health Education Center (Dec. 2, 2022) https://www.justice.gov/usao-ma/pr/texas-man-charged-threatening-doctor-affiliated-national-lgbtqia-health-education-center.

[5] Tucker Carlson, *Hospitals are Mutilating Children*, TUCKER CARLSON TONIGHT (Sept. 21, 2022), https://www.foxnews.com/video/6312671995112. In addition, Carlson published a picture of the board of directors of Vanderbilt Medical Center, which provides care to transgender children, with the caption "WE WILL SHOW YOU WHO IS RESPONSIBLE FOR THIS," as Carlson read the names of each director aloud. *Id.*

information about specific doctors and other personnel, and even outright removing information about gender-affirming care in its entirety.[6] Requiring Dr. Roe to proceed under their own name would subject them to similar threats once their name is connected to this litigation. It is foreseeable that Dr. Roe would receive similar harassment by virtue of having their name associated with this case.

In addition to retaliation from the public, Dr. Roe also fears retaliation from the government. Dr. Roe is employed by a research institution which receives funds from the State of Florida. Dr. Roe reasonably fears that if their name or the name of their employer were made public, the state would pull the institution's funding or take other punitive, retaliatory action. Governor DeSantis has a history of taking punitive action against individuals and organizations that have opposing viewpoints to his own.[7] Moreover, Governor DeSantis expressed his own personal desire to take punitive action against doctors who provide treatment for gender dysphoria. At a press conference speaking about doctors who provide transgender medical care,

---

[6] Tara Bannow and Kate Sheridan, *Harassment Prompts Children's Hospitals to Strip Websites, Threatening Access to Gender-Affirming Care*, STAT (Oct. 3, 2022), https://www.statnews.com/2022/10/03/childrens-hospitals-strip-websites-gender-affirming-care/.

[7] Notable examples include Governor DeSantis terminating the Reedy Creek Improvement District and Walt Disney World's self-governing status in response to Disney's position opposing Florida House Bill 1557, better known as the "Don't Say Gay" bill. CBS NEWS, *Florida Moves to Curtail Disney World's Powers as "Don't Say Gay" Feud Advances* (Jan 6, 2023, 5:13PM), https://www.cbsnews.com/news/dont-say-gay-feud-advances-with-new-proposed-legislation/. Governor DeSantis also removed six of the trustees of the New College of Florida, "a progressive community of free thinkers," to transform the school into "a beacon of conservatism." Patricia Mazzei, *DeSantis's Latest Target: A Small College of 'Free Thinkers'*, NEW YORK TIMES (Feb. 14, 2023), https://www.nytimes.com/2023/02/14/us/ron-desantis-new-college-florida.html.

10

Governor DeSantis said, "I think these doctors need to get sued for what's happening."[8] The threat of government retaliation is not only providing a chilling effect on Dr. Roe's willingness to testify, but also Dr. Roe's willingness to remain open about their treatment of transgender children. Dr. Roe is providing evidence-based medical care for their patients in accordance with the authoritative standards of care and clinical guidelines, and stands by the high-quality treatment that they have been trained in providing, but the state of Florida is actively seeking to criminalize doctors who provide this care[9] and investigate organizations that follow the standards of care.[10]

Further, Dr. Roe's identity should be protected because their identification poses a risk of professional and economic harm. Dr. Roe reasonably fears that the public disclosure of their name would lead to reputational harm. Dr. Roe, a pediatrician and trusted member of the community they care for, fears that some patients will cease to use Dr. Roe as a medical care provider if they learn that Dr. Roe also treats transgender children. Moreover, Dr. Roe fears that their employment

---

[8] WLPG LOCAL 10, *DeSantis Wants to Ban Transgender Care for Youth Covered by Medicaid*, (Aug. 3, 2022), https://www.youtube.com/watch?v=NZS6egKVgdc.
[9] Florida S.B. 254, "Treatments for Sex Reassignment," (2023) (creating Section 456.52(4)(b), subjecting any physician who provides treatment for gender dysphoria to minors "commits a felony of the third degree.")
[10] "Authorization to Commence Investigation" (April 23, 2023) (Florida Speaker of the House authorizing and directing the Florida House Health and Human Services Committee to investigate the World Professional Association for Transgender Health ("WPATH"), and to issue subpoenas to "Florida-based organizations that recommend, endorse, or otherwise promote the standard of care described therein."

will be jeopardized because, as discussed above, their employer will likely be subject to harassment and threats, which the employer could avoid by terminating Dr. Roe.

Moreover, permitting Dr. Roe to proceed under pseudonym will not prejudice Defendants. Defendants will still have a meaningful opportunity to conduct discovery even with the protection of Dr. Roe's identity. Dr. Roe's identity has no bearing on their credibility and is irrelevant to Defendants' defenses in this matter. *See United States v. Urena*, 8 F. Supp. 3d 568, 571 (S.D.N.Y. 2014) (finding that "nothing about [the witness's] real name goes to his credibility or knowledge regarding the subject of his testimony"); *United States v. Salemme*, 2018 WL 2465359, at *3 (D. Mass. 2018) ("[n]o party has argued that the personal identifying information of the [witnesses] is necessary or relevant to their case.") (permitting witnesses to use pseudonym and to testify using makeup to hide their true identity). Further, Dr. Roe is not participating in this case as an expert witness; Dr. Roe is the treating provider of Plaintiff Susan Doe and, as such, is providing a limited scope declaration regarding Susan's medically necessary treatment, which is being submitted in support of the Declaration of Plaintiff Jane Doe as an exhibit to Plaintiffs' Motion for Preliminary Injunction.

Finally, Dr. Roe's privacy interest in resisting disclosure of their identity outweighs any public interest favoring disclosure. "The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Gardner v.*

*Newsday, Inc.*, 895 F. 2d 74, 79-80 (2d Cir. 1990) (internal quotes omitted) (holding the trial court did not abuse its discretion in redacting the names of third parties from a warrant application). As discussed above, Dr. Roe would open themselves up to threats of physical violence, harassment, and retaliation if their identity was made public because it is foreseeable that proponents of the rules challenged in this litigation would seek to harass Dr. Roe to discourage them from offering gender-affirming care. "[C]ourts have the power to ensure that their records are not 'used to gratify public spite or promote public scandal . . . .'" *United States v. Amodeo*, 71 F. 3d 1044, 1051 (2d Cir. 1995) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). Requiring Dr. Roe to disclose their identity would only paint a target on their back for harassment by the public.

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that this court enter an Order:

1. Granting Plaintiffs leave to proceed in this matter with the use of a pseudonym for Dr. Roe;

2. Ordering that Defendants refrain from publicly disclosing the name and/or any personally identifying information of Dr. Roe should Defendants learn Dr. Roe's name and/or any personally identifying information; and

3. Ordering that all parties shall submit pleadings, briefing, and evidence either (a) using Dr. Roe's pseudonym instead of their real name and other personally

identifying information, or (b) redacting Dr. Roe's name and other personally identifying information in any document filed with this Court.

Dated: April 24, 2023

Respectfully Submitted,

| | |
|---|---|
| **SOUTHERN LEGAL COUNSEL** | **NATIONAL CENTER FOR LESBIAN RIGHTS** |
| *By: /s/ Simone Chriss* | |
| **Simone Chriss** | **Christopher F. Stoll** |
| Florida Bar No. 124062 | (CA Bar No. 179046) |
| **Chelsea Dunn** | **Kelly Jo Popkin** |
| Florida Bar No. 1013541 | (NY Bar No. 5698220)* |
| 1229 NW 12th Avenue | National Center for Lesbian Rights |
| Gainesville, FL 32601 | 870 Market Street, Suite 370 |
| (352) 271-8890 | San Francisco, CA 94102 |
| Simone.Chriss@southernlegal.org | Tel. 415-365-1320 |
| Chelsea.Dunn@southernlegal.org | cstoll@nclrights.org |
| | kpopkin@nclrights.org |
| **HUMAN RIGHTS CAMPAIGN FOUNDATION** | **GLBTQ LEGAL ADVOCATES & DEFENDERS** |
| **Jason Starr*** (NY No. 5005194) | |
| **Ami Patel*** (CA No. 325647) | **Jennifer Levi*** |
| Human Rights Campaign Foundation | **Chris Erchull*** |
| 1640 Rhode Island Avenue NW | 18 Tremont, Suite 950 |
| Washington, D.C. 20036 | Boston, MA 02108 |
| Telephone: (202) 993-4180 | (617) 426-1350 |
| Facsimile: (202) 628-0517 | jlevi@glad.org |
| Ami.Patel@hrc.org | cerchull@glad.org |
| Jason.Starr@hrc.org | |
| | *\* Admitted pro hac vice* |
| | ***Counsel for Plaintiffs*** |

## CERTIFICATION OF WORD LIMIT

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that there are 3,117 words contained in this Motion and Memorandum.

/s/ Simone Chriss
Simone Chriss

## CERTIFICATE OF SATISFACTION OF ATTORNEY-CONFERENCE REQUIREMENT

Pursuant to Local Rule 7.1(B), Counsel for Plaintiffs conferred with Counsel for Defendants on April 20, 2023 and April 24, 2023. Counsel for Defendants did not provide a position on the relief sought in this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Counsel for Defendants stated that they would accept service via email. I certify that I served by email the foregoing on the following non-CM/ECF participant:

Mohammad O. Jazil
Counsel for Defendants
Holtzman Vogel
(850) 391-0503
mjazil@holtzmanvogel.com

/s/ Simone Chriss
Simone Chriss