IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

| | |
|---|---|
| JANE DOE, individually and on behalf of her minor daughter, SUSAN DOE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH A. LADAPO, M.D., *in his official capacity as Florida's Surgeon General of the Florida Department of Health,* et al.,<br><br>*Defendants*. | Case No. 4:23-cv-00114-RH-MAF |

**DECLARATION OF OLIVIA NOEL IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Olivia Noel,[1] hereby declare and state as follows:

1.  I am over the age of 18, of sound mind, and in all respects competent to testify. I have personal knowledge of the information contained in this Declaration and would testify completely to those facts if called to do so.

2.  I am 26 years old, I am a Florida resident, and I am a plaintiff in this Action.

3.  I am a woman and I am also transgender. Although I was incorrectly assigned the sex male at birth, my gender identity is female. I experience and have

---

[1] My legal name is Jae Olivia Noel, but Olivia is the name that I use.

1

been diagnosed with gender dysphoria due to the significant distress caused by the disconnect between my sex assigned at birth, along with some of my primary and secondary sex characteristics, and my gender identity.

4. I began receiving transition-related care in May of 2016, when I was 19 years old. I initiated care at the UF Health multi-disciplinary youth gender clinic with Dr. Janet Silverstein, M.D., the pediatric endocrinologist leading the clinic at that time. I had multiple appointments prior to being prescribed any medication as treatment for my gender dysphoria, and during the appointments I met with a mental health provider, an endocrinologist, and other members of their treatment team.

5. Prior to starting me on hormone therapy, I was required to meet with a mental health provider who did a full assessment to determine my readiness for hormone therapy treatment.

6. I continued to receive my care from the UF Health youth gender clinic until I was 21 years old, at which time I was referred to another UF Health endocrinologist who specializes in adult care, Dr. Srihari.

7. I then moved to Seattle, Washington and continued my treatment with a provider there during 2022.

8. When I moved back to Florida in March of this year, after being on estrogen for seven years, I established care at Planned Parenthood with a nurse

practitioner. I also established mental health care with a physician assistant – Certified (PA-C).

9. I recently learned that my chosen and trusted provider at Planned Parenthood would no longer be able to provide my care, due to SB 254.

10. I have less than one month left of my estrogen, and I am unable to get an appointment with a physician to prescribe my necessary care once that runs out. I am concerned about my health and wellbeing if I am forced to go without my hormones. Estrogen is an essential part of the medical treatment for my gender dysphoria. Without it, I will experience the clinically significant distress that disrupts my daily life.

11. As set forth, I will run out of estrogen within a month's time. I know that the nurse practitioner at Planned Parenthood included refills as part of my last prescription. However, I believe that because of Florida law, I will be unable to get them because pharmacies in Florida are refusing to fill scripts written by nurse practitioners.

12. I have not been able to establish care with a physician, and I recently lost my job and my health insurance coverage, which was provided by my employer. Without health insurance, Planned Parenthood is the only place I am aware of where I can afford to receive my gender transition-related care. I have asked Planned

DocuSign Envelope ID: B42232DB-755B-4BD6-850C-E6BF9857F836
Case 4:23-cv-00114-RH-MAF   Document 115-3   Filed 07/24/23   Page 4 of 6

Parenthood and they have told me very clearly that they will not continue providing my needed care.

13. I tried but was unable to make an appointment with my former endocrinologist at UF Health. He also informed me that SB 254 was impacting his practice because, like my current provider, it functions primarily through nurse practitioners.

14. I also reached out to my former medical provider in Seattle, Washington to see if I could continue to receive my transition-related care from them. They said I could not unless I travel to Washington, which I cannot afford.

15. I am scared and concerned that I will imminently not be able to receive the health care that I need. I moved back to Florida because this is where my whole life is – my family my friends, my school - I've always considered Florida to be my home. I am afraid to stay here if I cannot access my needed medical care, but I also cannot leave at this time. Hormone therapy enables me to comfortably live as a woman, which I have done throughout my adulthood. Without it, I will experience the debilitating effects of untreated gender dysphoria and face serious disruption in my life.

16. Even if I could establish a relationship with a medical provider, which I have been unable to do, the barriers that the Boards of Medicine put in place with the new required consent forms will be an additional obstacle to accessing the care

I need. I do not have health insurance, and some of the requirements will be impossible for me to meet. For example, the requirement that the psychological and social evaluation be "performed by a Florida licensed board-certified psychiatrist or a Florida licensed psychologist" creates a hurdle to care for me that I cannot overcome. Further, I worry that providers could use my diagnoses of anxiety, depression, and ADHD as a basis to deny me care, due to the language about "psychological comorbidities that interferes with the diagnostic work-up or treatment" creating barriers to care. I also cannot meet the criteria in the new consent forms that "may be recommended" by a prescribing physician, such as suicide risk assessments, bone density (DEXA) scans, annual mental health assessments by a board-certified Florida licensed psychiatrist or psychologist, and more because I do not have doctors to provide them and I cannot afford them if I did. Even if I had health insurance, these burdensome requirements are beyond what is covered by my prior health insurance plans, and would result in me being unable to access care.

17. SB 254, and the Boards' Emergency Rules and Informed Consent forms stemming from SB 254, have created significant obstacles to accessing care for me and for so many others. My chosen, trusted medical provider cannot prescribe my estrogen without being criminalized and there is not a Florida M.D. or D.O. who will prescribe my needed medical care. This feels cruel and inhumane.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of July, 2023.

Respectfully Submitted,

DocuSigned by:

_____
F07958F11E35460...

Jae Olivia Noel