## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JANE DOE et al.,

    Plaintiffs,

    v.

JOSEPH A. LADAPO et al.,

    Defendants.

Civil No. 4:23-cv-00114-RH-MAF

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

### I.    Introduction

Plaintiffs Jane Doe, individually and on behalf of her minor daughter Susan Doe, Brenda Boe, individually and on behalf of her minor son Bennett Boe, Carla Coe, individually and on behalf of her minor daughter Christina Coe, Fiona Foe, individually and on behalf of her minor daughter Freya Foe, Gloria Goe, individually and on behalf of her minor son Gavin Goe, Linda Loe, individually and on behalf of her minor daughter Lisa Loe, Patricia Poe, individually and on behalf of her minor son Paul Poe, and Adult Plaintiffs Lucien Hamel, Olivia Noel, Rebecca Cruz Evia, and Kai Pope (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion for class certification and appointment of class

- 1 -

counsel pursuant to Rules 23(a), 23(b)(2) and 23(g) of the Federal Rules of Civil Procedure.

Florida Senate Bill 254 ("SB 254"), its related emergency rules and regulations, and the Boards of Medicine and Osteopathic Medicines' rules 64B8-0.019 and 64B15-14.014, Fla. Admin. Code (collectively, the "Transgender Medical Restrictions") have erected unconstitutional obstacles to transgender persons obtaining medically necessary transition-related care for gender dysphoria. Unless enjoined by this Court, the Transgender Medical Restrictions will have a devasting impact on the physical and mental health of transgender persons in Florida. Because these legal obstacles affect all transgender persons in Florida in similar ways, Plaintiffs in this action seek a class-wide declaratory judgment that the Transgender Medical Restrictions violate the Fourteenth Amendment to the United States Constitution, as well as a class-wide injunction against their enforcement.

To that end, Plaintiffs now seek certification of three Plaintiff Classes (defined below), along with appointment of representatives and counsel for each class. All of the requirements for class certification are met here. The named class representatives have Article III standing; the proposed classes are ascertainable and satisfy Rule 23(a); and certification is appropriate under Rule 23(b)(2), which was specifically intended to facilitate the provision of class-wide non-monetary relief in

civil rights actions like this one where governmental defendants are enforcing common, unconstitutional legal restrictions against an identifiable group of persons.

For the reasons set forth herein, the Court should certify the Plaintiff Classes, appoint class representatives and appoint the undersigned as class counsel.

## II.     Factual and Procedural Background

### A. Overview of Plaintiffs' Claims

As set forth in their Third Amended Complaint (Dkt. 118), Plaintiffs are pursuing a constitutional challenge to SB 254, its related regulations promulgated by the Florida Boards of Medicine and Osteopathic Medicine (the "Boards"), and 64B8-9.019 and 64B15-14.014, Fla. Admin. Code, that single out transgender minors and adults in order to severely limit, and in the case of minors, completely ban their ability to obtain established, medically necessary transition-related care. Under the Transgender Medical Restrictions, healthcare providers are subject to criminal and civil penalties if they prescribe or administer any transition-related medications to transgender minors or violate restrictions on providing care to transgender adults. (Dkt. 118 ¶ 97.) These restrictions have no medical purpose and serve only to prevent transgender people from obtaining needed, evidence-based care. (*Id*. ¶¶ 94, 107-14.)

With respect to transgender minors specifically, Section 5 of SB 254, and rules adopted by the Boards that pre-date SB 254,[1] ban altogether the provision of transition-related care, including puberty blockers and hormone therapies, for any minors who were not already actively receiving such prescriptions as of May 17, 2023 (the "Treatment Bans"). (*Id.* ¶ 99.) Under the plain language of the Treatment Bans, no transgender minor in need of such care may begin receiving it for the first time in the State of Florida after May 17, 2023 (and, under the pre-SB 254 rules, after March 16 and 28, 2023). Even for transgender minors who were receiving transition-related prescriptions as of that date, continued treatment is permissible only if the minor satisfies the onerous informed consent requirements developed by the Boards and complies with SB 254's other restrictions on transition-related care, discussed below. (*Id.*)

The Transgender Medical Restrictions (and, in most cases, outright prohibition) on well-established medical care for transgender minors violate their parents' fundamental right under the Due Process Clause of the Fourteenth

---

[1] The Board of Medicine adopted a ban on medical care for transgender minors effective on March 16, 2023 (Board of Medicine, Rule 64B8-9.019, Fla. Admin. Code). The Board of Osteopathic Medicine adopted a ban on medical care for transgender minors effective March 28, 2023 (Board of Osteopathic Medicine, Rule 64B15-14.014, Fla. Admin. Code). Both rules authorized continued treatment for adolescents receiving care prior to the adoption of the rule. SB 254 codified by statute the bans included in the rules adopted by the Boards, created onerous criminal penalties, and like the rules adopted by the Boards that predated it, authorized continued care for adolescents whose care started prior to SB 254's effective date.

Amendment to make medical decisions to protect the health and wellbeing of their adolescent children.  (*Id.* ¶ 4.)  They also violate the Fourteenth Amendment's Equal Protection Clause because they discriminate based on transgender status and sex and do not serve even a legitimate governmental interest, much less a compelling or important one.  (*Id.* ¶ 5.)  Indeed, on June 6, 2023, the Court granted a preliminary injunction against the enforcement of the Treatment Bans, finding that both the parental rights and equal protection claims were likely to succeed on the merits. (Dkt. 90, at 26–27 (Preliminary Injunction Opinion ("PI Op.")).)

SB 254 and the Boards' related emergency rules further restrict the provision of transition-related care to transgender adults by:  (1) prohibiting non-physicians, such as advanced practice registered nurse practitioners, from providing treatment for gender dysphoria; (2) mandating the use of "informed consent" forms that contain blatantly false information, deviate from the well-accepted standards of care for gender dysphoria and impose numerous medically-unnecessary requirements; and (3) requiring transgender patients to see a physician in-person in order to give informed consent and sign the forms in the presence of a third-party witness.  All of these treatment restrictions are encompassed within the Transgender Medical Restrictions, as defined above.  (Dkt. 118 ¶¶ 101–03, 107–14.)  As explained in greater detail in Plaintiffs' Memorandum of Law in support of their July 24, 2023 motion for a preliminary injunction (Dkt. 116), the Transgender Medical

Restrictions violate the Equal Protection Clause because they discriminate on the basis of transgender status and sex and cannot satisfy heightened constitutional scrutiny.

### B. The Proposed Classes

In order to remedy the irreparable harm caused by Florida's unconstitutional restrictions on transition-related care, Plaintiffs seek declaratory relief and an injunction against enforcement of the Transgender Medical Restrictions. (Dkt. 118 ¶ 6.) They seek such relief on behalf of themselves and all similarly-situated transgender persons in the State of Florida. To that end, Plaintiffs respectfully seek certification under Rule 23 of the following three plaintiff classes – Class 1, Class 2 and Class 3 (collectively, the "Plaintiff Classes").

### i. *Class 1 – Challenging the Treatment Ban*

Plaintiffs' first proposed Class ("Class 1") comprises transgender minors in Florida, as well as their parents, who are banned altogether from obtaining transition-related care by the Treatment Bans. More specifically, Class 1 is defined as:

> All transgender minors in the State of Florida who are prohibited from initiating treatment with puberty blockers and/or hormone therapy as a result of the Treatment Bans, and the parents of all such minors.

Class 1 seeks class-wide declaratory and injunctive relief that would prevent the enforcement of the Treatment Bans on the grounds that they violate the equal

protection rights of the minors themselves and the substantive due process rights of their parents.

Plaintiffs Susan and Jane Doe, Gavin and Gloria Goe, and Lisa and Linda Loe seek appointment as the class representatives for Class 1. As the Court found in its Preliminary Injunction Opinion, all three minor Plaintiffs suffer from gender dysphoria but are prevented from commencing treatment with puberty blockers as a result of the Treatment Bans. (Dkt. 90 at 13–16.) The Court further found, based on the record before it, that "qualified professionals have properly evaluated the children's medical conditions and needs in accordance with the well-established standards of care, and that the [parent] plaintiffs and their children, in consultation with their treating professionals, have determined that the benefits of treatment with GnRH agonists [as puberty blockers], and eventually with cross-sex hormones, will outweigh the risks." (*Id*. at 16.) Indeed, the Court determined the minor Plaintiffs "will suffer irreparable harm – the unwanted and irreversible onset and progression of puberty in their natal sex – if they do not promptly begin treatment with GnRH agonists." (*Id*. at 39–40.) Other members of Class 1 are subject to the same bans on receiving transition-related treatment and are suffering the same injury as the proposed representatives for Class 1.

### ii. *Class 2 – Challenging the Transgender Medical Restrictions Applicable to Transgender Minors*

Transgender minors who are still ostensibly eligible to receive transition-

related care under SB 254 and the Boards' rules that pre-date passage of SB 254, but remain subject to the informed consent and related obstacles and barriers created by the Transgender Medical Restrictions in their attempts to obtain treatment, are covered by Plaintiffs' second proposed Class ("Class 2"). Class 2 is defined as:

> All transgender minors in the State of Florida who were being actively treated with puberty blockers and/or hormone therapies as of May 17, 2023, and since that date have attempted, are attempting or will attempt to obtain access to such treatments that are subject to the Transgender Medical Restrictions applicable to minors, and the parents of all such minors.

In the same vein as Class 1, Class 2 seeks class-wide declaratory and injunctive relief that would prevent the enforcement of the Transgender Medical Restrictions against transgender minors on the grounds that they violate the equal protection rights of the minors themselves and the substantive due process rights of their parents.

Plaintiffs Freya and Fiona Foe, and Paul and Patricia Poe, seek appointment as the class representatives for Class 2. Freya Foe is a ten-year-old transgender girl. In December 2022, Freya's doctors determined that puberty blocking medication was medically necessary for the treatment of her gender dysphoria. With the consent of her parents, Freya began puberty blocking medication, after which her wellbeing and performance in school improved. (Dkt. 118 ¶¶ 130–34.) Following the passage of SB 254, Freya has become subject to the Transgender Medical Restrictions, which have imposed numerous obstacles on her efforts to access care. (*Id*. ¶ 135.) Paul Poe is a nine-year-old transgender boy who began treatment with puberty blockers

in February 2023 to alleviate his gender dysphoria. (*Id.* ¶¶ 150–54.) However, Paul's provider discontinued his treatment as a result of the Transgender Medical Restrictions. Paul's family must find medical providers outside of Florida to secure the care he needs, which presents a hardship to the family and potential harms because of disruption to the continuity of his care, as long as the Transgender Medical Restrictions applicable to minors are in effect. (*Id.* ¶ 155.) Other members of Class 2 are subject to the same restrictions on receiving transition-related treatment and are suffering the same injury as the proposed representatives for Class 2.

### iii. *Class 3 – Challenging the Transgender Medical Restrictions Applicable to Transgender Adults*

Plaintiffs' final proposed Class ("Class 3") encompasses Florida's transgender adults who, in their efforts to obtain medically necessary transition-related care, are subject to the Transgender Medical Restrictions applicable to adults contained in SB 254 and the Boards' emergency rules. Class 3 is defined as:

> All transgender adults in the State of Florida who have attempted, are attempting or will attempt to obtain access to transition-related medications or surgeries that are subject to the Transgender Medical Restrictions applicable to transgender adults.

Class 3 seeks class-wide declaratory and injunctive relief that would prevent the enforcement of the Transgender Medical Restrictions against Transgender Adults on the grounds that they violate the Equal Protection Clause.

Plaintiffs Lucien Hamel, Olivia Noel, Rebecca Cruz Evia, and Kai Pope seek appointment as the class representatives for Class 3.  As explained more fully in the Declarations each of these Plaintiffs submitted in support of Plaintiffs' July 24, 2023 preliminary injunction motion (Dkt. 115), all are transgender adults in Florida who are experiencing significant obstacles to obtaining transition-related care as a result of the Transgender Medical Restrictions.  The result has been to leave all of them struggling to find alternative sources of care and experiencing the negative health effects of untreated gender dysphoria.

- Plaintiff Kai Pope is a 51-year-old transgender man with gender dysphoria who was scheduled to undergo genital surgery in September 2023 (after a year of preparation and waiting).  But the surgery was canceled in July 2023 because of the Transgender Medical Restrictions. (Dkt. 115-1 ¶¶ 2–4, 9-13 (Declaration of Kai Pope in Support of Plaintiffs' Motion for Preliminary Injunction ("Pope Decl.")).)  If Kai cannot get the scheduled surgery, he will continue to suffer the effects of untreated gender dysphoria. (*Id.* ¶¶ 11–13.)

- Plaintiff Lucien Hamel is a 27-year-old transgender man who lives and works in Florida with his wife and child.  (Dkt. 115-2 ¶¶ 2–3 (Declaration of Lucien Hamel in Support of Plaintiffs' Motion for Preliminary Injunction ("Hamel Decl.")).)  The medical provider from

whom he currently receives his hormone therapy is licensed as an autonomous Advanced Practice Registered Nurse – Nurse Practitioner ("APRN-NP") experienced in the treatment of gender dysphoria, but who can no longer legally prescribe transition-related medications because of the Transgender Medical Restrictions. (*Id.* ¶¶ 7-9.)  Lucien received his last testosterone shot on June 28 and has been without medication since that time. (*Id.* ¶¶ 9–10.)  Lucien has been searching for a physician to whom he could transfer his care for the treatment of gender dysphoria, but has not been able to find one.  (*Id.* ¶¶ 9–14.) And even at a point if and when he can establish with a new treatment provider, he will face a disruption to his ongoing medical care with a provider with whom he has a trusted relationship. (*Id.* ¶ 13.) Being forced to go without testosterone has had, and will continue to have, devastating consequences for Lucien physically, emotionally, and psychologically. (*Id.* ¶¶ 12–14.)

- Plaintiff Olivia Noel is a transgender woman who resides in Florida. (Dkt. 115-3 ¶¶ 2–3 (Declaration of Olivia Noel in Support of Plaintiffs' Motion for Preliminary Injunction ("Noel Decl.")).) She began receiving transition-related care in May 2016 at the age of 19. (*Id.* ¶ 4.) Olivia had continuous medical support for treatment of gender

dysphoria since she started treatment, including now having been on hormones for 7 years. (*Id.* ¶ 8.)  Most recently, she has been receiving medical care through a physician's assistant ("PA") at Planned Parenthood, who is no longer permitted to prescribe transition-related medications due to SB 254.  (*Id.* ¶¶ 8–9.)  Olivia has less than one month left of her estrogen prescription but has not been able to find a physician to prescribe her necessary care once that prescription runs out. (*Id.* ¶¶ 10–14.) Even if she could find a physician, Olivia is not able to find a psychiatrist or psychologist to perform the evaluation she needs under the requirements reflected in the Boards' informed consent forms to initiate care with another doctor in a timely way. (*Id.* ¶¶ 16–17.)  She is also being harmed by other obstacles imposed by the Transgender Medical Restrictions that prevent her from obtaining care for her gender dysphoria through telehealth, which has been a primary way for her to obtain care.  (*Id.* ¶¶ 14-17.)

- Finally, Plaintiff *Rebecca Cruz Evia* is a transgender woman who resides in St. Lucie County, Florida.  (Dkt. 115-4 ¶¶ 2–3 (Declaration of Rebecca Cruz Evia in Support of Plaintiffs' Motion for Preliminary Injunction ("Cruz Evia Decl.")).) Rebecca has received various forms of transition-related care for the treatment of her gender

dysphoria and was scheduled to undergo medically necessary vaginoplasty surgery at the University of Miami on August 15, 2023. (*Id.* ¶¶ 5–9.)   Before the surgery day, her surgeon informed her that because of the Transgender Medical Restrictions, the procedure was cancelled.  (*Id.* ¶ 10.)  Upon receiving the call, Rebecca was devastated and shocked, as she was weeks away from obtaining this essential surgery. (*Id.* ¶¶ 9–12.) She has sought out alternative providers but has not been able to access any other option for getting the surgery done. (*Id.* ¶ 11.)  Without the surgery, Rebecca will continue to suffer harms from the gender dysphoria she experiences. (*Id.* ¶ 12.)

Other members of Class 3 are subject to the same restrictions on receiving transition-related treatment and are suffering the same injury as the proposed representatives for Class 3.  Indeed, stories similar to those above are playing out all over Florida every day since the Transgender Medical Restrictions took effect.

For the reasons explained below, all three Plaintiff Classes satisfy the requirements for certification under Rule 23.

## III.   Argument

To grant a motion for class certification, the Court "must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Murray*

*v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001).  Second, the Court must find the proposed class is "adequately defined and clearly ascertainable" before considering the Rule 23(a) factors.  *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302–04 (11th Cir. 2021) (holding that ascertainability is an implied prerequisite of Rule 23 that plaintiffs must satisfy, but that the so-called "administrative feasibility" standard adopted in other federal circuits is not a requirement at all under the Rule).

Assuming it finds standing and ascertainability satisfied, the Court must then conduct a "rigorous analysis" to ensure that the proposed class satisfies all four requirements of Rule 23(a) and at least one of Rule 23(b)'s requirements.  *Florida Educ. Ass'n v. Dep't of Educ.*, Case No. 4:17cv414-RH-CAS, 2019 WL 8219403, at *2 (N.D. Fla. Jan. 3, 2019) (Hinkle, J.).  Rule 23(a) requires that:  (1) the "class is so numerous that joinder of the members is impracticable;" (2) there "are questions of law or fact common to the class;" (3) the "claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) the "representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a).

As to Rule 23(b), Plaintiffs here seek certification under Rule 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

FED. R. CIV. P. 23(b)(2).   Rule 23(b)(2) is the "traditional vehicle to vindicate the widespread deprivation of civil rights[.]" *Colonel Fin. Mgm't Officer v. Austin*, 622 F. Supp. 3d 1187, 1204 (M.D. Fla. 2022); *Hernandez v. Medows*, 209 F.R.D. 665, 667 (S.D. Fla. 2002) ("Rule 23(b)(2) was intended 'primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices.'" (quoting *Penson v. Terminal Transport Co., Inc.*, 634 F.2d 989, 993 (5th Cir. 1981))).   Plaintiffs here seek only declaratory and injunctive relief against Florida's Transgender Medical Restrictions, making this case a textbook candidate for class certification under Rule 23(b)(2).

Plaintiffs bear the burden of establishing that Rule 23's prerequisites are satisfied.   *G.H. v. Tamayo*, 339 F.R.D. 584, 588 (N.D. Fla. 2021) (Hinkle, J). Although the "rigorous analysis" required under Rule 23 "will entail some overlap with the merits of the plaintiff's underlying claim[,]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), the rule nevertheless "grants no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see generally G.H.*, 339 F.R.D. at 588.

Plaintiffs here readily meet the requirements for certification of the Plaintiff Classes.   The named Plaintiffs have Article III standing, and each of the Plaintiff Classes is "clearly ascertainable" under *Cherry*.   Plaintiffs also satisfy Rule 23(a)'s numerosity, commonality, typicality and adequacy requirements, and certification

of the Plaintiff Classes under Rule 23(b)(2) is appropriate. The Court should grant Plaintiffs' motion in its entirety. *See Cherry*, 986 F.3d at 1303 ("The Supreme Court has made clear that district courts must grant class certification in 'each and every case' where the conditions of Rule 23(a) and (b) are met." (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–400 (2010))).

## A. The Proposed Class Representatives Have Article III Standing

For each claim asserted by a class, at least one named class representative must have Article III standing to assert that same claim. *Prado-Steinman*, 221 F.3d at 1279–80. Article III standing requires the plaintiff to show an injury-in-fact that is traceable to the defendants' conduct and redressable by a judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury-in-fact means a concrete and particularized, and actual or imminent, invasion of a legally-protected interest possessed by the plaintiff. *Id*. To establish standing to seek prospective injunctive relief, a plaintiff must show "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Union*, 442 U.S. 289, 298 (1979). However, such a plaintiff "does not have to await the consummation of the threatened injury to obtain preventive relief." *Id.* (citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).

In this case, the standing inquiry is straightforward. With respect to the Class 1 representatives, the Court has already found at the preliminary injunction stage

that Susan and Jane Doe, Gavin and Gloria Goe, and Lisa and Linda Loe will suffer immediate irreparable harm if the Treatment Bans are enforced. (Dkt. 90 at 39–40.) That is more than sufficient to establish Article III standing to prosecute the substantive due process and equal protection claims asserted by Class 1.

The record further demonstrates that each of the Class 2 and Class 3 representatives has been prevented from accessing transition-related care as a result of the enactment and operation of the Transgender Medical Restrictions. (*See* Sections II.B.ii. and iii., *supra*.) Treatments have been discontinued; prescriptions are not being re-filled; previously-scheduled, essential surgeries have been canceled; and patients are unable to meet the prerequisites for care. All of this has been happening to the Class 2 and Class 3 representatives in real time since SB 254 came into effect. These disruptions to transgender patient care constitute concrete, and actual or imminent, injuries-in-fact that are traceable to the enactment and operation of the Transgender Medical Restrictions. A decision from this Court declaring the Transgender Medical Restrictions unconstitutional and enjoining their enforcement will redress those injuries. The Class 2 representatives thus have standing to bring the substantive due process and equal protection claims asserted by Class 2, and the Adult Plaintiffs have standing to bring the equal protection claim asserted by Class 3. *See Hernandez*, 209 F.R.D. at 668 (named plaintiffs whose prescription drug coverage is or will be negatively impacted without notice and opportunity for a fair

- 17 -

hearing have standing to seek class-wide declaratory and injunctive relief); *Dekker v. Weida*, Findings of Fact and Conclusions of Law, Case No. 4:22cv325-RH-MAF (Dkt. 246), at 12 (Hinkle, J.) (holding that injury-in-fact, traceability and redressability all satisfied for transgender plaintiffs challenging the loss of Medicaid payments for medically necessary puberty blockers and hormone treatments).

### B. The Proposed Plaintiff Classes Are Ascertainable

As a prerequisite for certification, a proposed class must be "adequately defined and clearly ascertainable" – meaning that "its membership is capable of being determined." *Cherry*, 986 F.3d at 1303 (cleaned up). It is unsettled in this Circuit whether the ascertainability requirement applies outside the context of Rule 23(b)(3) damages classes. *See Braggs v. Dunn*, 137 F.R.D. 634, 671 (M.D. Ala. 2016) ("Defendants have not cited, and the court is not aware, of any cases within this circuit applying the ascertainability requirement to a Rule 23(b)(2) class, much less any binding precedent doing so."). Because of the indivisible nature of the remedy in a suit for declaratory and injunctive relief (and the lack of procedural requirements such as class-wide notice), a Rule 23(b)(2) class definition need not be as precise as that of a 23(b)(3) class. *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). Even if, however, the ascertainability factor does apply, Plaintiffs' proposed class definitions are ascertainable. A class is "identifiable" when "its members can be ascertained by reference to objective criteria." *Bussey v. Macon*

*Co. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014).  However, class membership does not have to be "capable of *convenient* determination." *Cherry*, 986 F.3d at 1303.

The Plaintiff Classes readily satisfy this standard.  At their core, each of the three Class definitions encompass transgender persons in Florida who are seeking, have attempted to seek or will in the future attempt to seek medical treatments for gender dysphoria that are banned or restricted under the terms of the Transgender Medical Restrictions.  Once a person meets these basic criteria, their age and (for minors) active treatment status as of the effective date of the Transgender Medical Restrictions will determine the specific Class in which they are a member (along with the membership of the parents of transgender minors).  Membership in each of the three Plaintiff Classes is thus capable of being determined.  *See, e.g., Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*, 197 F.R.D. 522, 525 (S.D. Fla. 2000) (proposed class that extended to all disabled persons who were entitled to access to defendants' health care facilities was capable of having membership determined).  And, since Plaintiffs do not seek damages in this action, the Court will never be faced with the necessity of having to determine class membership for purposes of filing a claim against a common fund.  Rather, if Plaintiffs prevail on the merits at trial, any class-wide declaratory and injunctive relief entered by the Court will operate for the benefit of all class members without the need for

individualized determinations of membership.

### C. The Proposed Plaintiff Classes Satisfy Rule 23(a)

#### 1. *Numerosity*

Rule 23(a)(1) requires that a class must be large enough to render joinder of all members impracticable. *Hernandez*, 209 F.R.D. at 669; *G.H.*, 339 F.R.D. at 588. "Plaintiffs need not present an exact number for the class." *Hernandez*, 209 F.R.D. at 669; *Austin*, 622 F. Supp. 3d at 1206–07 ("Rule 23(a)(1) imposes a 'generally low hurdle,' and a plaintiff need not show the precise number of members in the class." (quoting *Muzuco v. ReSubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013))) (cleaned up). While there is not "fixed rule" or "definite standard" for numerosity, generally less than twenty-one members is insufficiently numerous, while more than forty members is adequate for certification. *Hernandez*, 209 F.R.D. at 669; *G.H.*, 339 F.R.D. at 588 (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Circ. 1986)).

In 2016, data from the Center for Disease Control's Behavioral Risk Factor Surveillance System suggested that 0.6% of U.S. adults identify as transgender. (Dkt. 118 ¶ 56.) Florida is estimated to have the second-largest population of transgender adults in the U.S., with roughly 94,400 adults identifying as transgender, per the Williams Institute's June 2022 report. With respect to transgender minors, the Williams Institute estimates 16,200 transgender minors aged 13-17 are residing

in Florida.  (*Id.*; Declaration of Thomas E. Redburn, Jr. ("Redburn Decl."), Ex. E at 9.)

Given these estimates, it is highly likely each of the Plaintiff Classes contains thousands of members – and a virtual certainty that each contains more than 40 members.  That is sufficient to satisfy the numerosity requirement.  *See Florida Educ. Ass'n*, 2019 WL 8219403, at *2 (existence of 4,000 potential members in one class, and 6,500 in another, sufficient to establish numerosity); *G.H.*, 339 F.R.D. at 588 (Florida Department of Juvenile Justice's data showing it placed between 2,720 and 3,853 children in solitary confinement from 2014 to 2020 was "easily enough" to meet numerosity requirement); *Austin,* 622 F. Supp. 3d at 1207 ("The Marine Corps has denied with finality hundreds of appeals from religiously objecting Marines; thus the class is sufficiently numerous."); *Ibrahim v. Acosta*, 326 F.R.D. 696, 699–700 (S.D. Fla. 2018) (finding class size of 64 persons sufficient to satisfy numerosity).

### 2.  Commonality

Rule 23(a)(2) requires that at least one issue of law or fact exists that is common to the class – meaning that it is "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *G.H.*, 339 F.R.D. at 589 ("The action 'must involve issues that are susceptible to class-wide proof.'")

(quoting *Auslander*, 244 F.3d at 811); *Hernandez*, 209 F.R.D. at 669 ("Commonality requires that there is at least one issue affecting all or a significant number of proposed class members."); *Hoffer v. Jones*, 323 F.R.D. 694, 697 (N.D. Fla. 2017) ("There is no requirement as to the number of common questions – even a single common question will do."). "What matters to class certification … is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (cleaned up). However, "factual differences between class members do not preclude a finding of commonality, as long as common questions of law exist." *Hernandez*, 209 F.R.D. at 669.

Where, as in this case, the plaintiffs allege a common discriminatory device – such as an unconstitutionally-discriminatory statute or regulation – the commonality requirement is readily satisfied. *See Access Now*, 197 F.R.D. at 526 ("The alleged existence of common discriminatory practices on the part of the Defendants satisfies the Rule 23 requirement of commonality."); *Hernandez*, 209 F.R.D. at 669 ("Where a common scheme is alleged, common questions of law or fact will exist."); *G.H.*, 339 F.R.D. at 589 (finding commonality satisfied where the "plaintiffs challenge practices that are consistently applied to children in Department [of Juvenile Justice] facilities across the state"). In that kind of case, the class members all share the same injury in the form of a violation of their constitutional rights through the operation

of a discriminatory government policy.  *See Austin*, 622 F. Supp. 3d at 1207 (citing *Doster v. Kendall*, 342 F.R.D. 117, 124 (S.D. Ohio 2022)); *Access Now*, 197 F.R.D. at 526 ("[T]he common course of conduct of the Defendants in relation to the Class also supports the commonality requirement.").

Commonality is readily apparent for Class 3.   Resolution of whether the Transgender Medical Restrictions applicable to transgender adults violate the Fourteenth Amendment's Equal Protection Clause will decide in one stroke *a* central – perhaps *the* central – issue underlying Class 3's claims.   The answer to that constitutional question will be based on class-wide proof and will be the same for every member of Class 3.   *G.H.*, 339 F.R.D. at 589 (plaintiffs' challenge to the constitutionality of the standard for placing children in solitary confinement satisfies commonality requirement); *Austin*, 622 F. Supp. 3d at 1207 (plaintiffs' contention that uniform analysis applied by Marine Corps to requests for religious accommodations violated the Religious Freedom Restoration Act was sufficient for commonality); *Florida Educ. Ass'n*, 2019 WL 8219403, at *3 (commonality satisfied where claim that SAT/ACT requirement for teacher bonuses has a disparate impact based on race or age would produce the same answer for every class member).  Factual differences concerning the specific treatments sought by, and the particular circumstances facing, each member of Class 3 do not negate the existence of this overriding constitutional issue that is common to all.  *See Hernandez*, 209

F.R.D. at 671 (holding that factual differences among members of class of Medicaid patients "do not negate the overriding common issue of law and fact, namely, is the Defendant violating the Medicaid Act and regulations, and the Due Process Clause, by failing to ensure adequate notice and fair hearing rights on uniform basis to all Medicaid recipients who are denied prescription benefits"). That overriding common issue is enough to satisfy Rule 23(a)(2).

While the analysis is slightly more complicated for Classes 1 and 2, the result is the same: commonality has been satisfied. Class 1 and Class 2 each challenges the constitutionality of the Treatment Bans and the Transgender Medical Restrictions applicable to minors, respectively, as violative of both the minor Plaintiffs' rights to equal protection of the laws and the parental Plaintiffs' separate substantive due process right to control their children's medical treatment. Although these legal theories are distinct, they share a common controlling issue: whether the Treatment Bans and Transgender Medical Restrictions applicable to minors, respectively, survive heightened constitutional scrutiny. This Court highlighted this common connection between the two theories in its Preliminary Injunction Opinion. (Dkt. 90.) After holding that the ban on transition-related treatment for minors in SB 254 and the Boards' rules likely failed heightened scrutiny under the Equal Protection Clause because it lacked any legitimate state interest whatsoever (and so was not even rationally related to such an interest), the Court went on to hold that

the parents would likely succeed on the merits of their Due Process Clause claim because "as set out above, there is no rational basis, let alone a basis that would survive heightened scrutiny, for prohibiting these treatments in appropriate circumstances." (Dkt. 90 at 25–27.)  In other words, a judicial determination that heightened scrutiny was not satisfied under one constitutional provision also led inexorably to the conclusion that it was not satisfied under the other provision either. Thus, the common question of the application of heightened constitutional scrutiny – the answer to which will be based on class-wide proof and will be the same for all class members – unifies the members of Classes 1 and 2, respectively, and is sufficient to satisfy Rule 23(a)(2).

Moreover, because each of the Plaintiff Classes challenges the constitutionality of statutory and regulatory provisions that operate in the case of each Class as a common scheme of discrimination against their respective members, the requisite commonality exists.  *See Access Now*, 197 F.R.D. at 526; *Hernandez*, 209 F.R.D. at 669; *G.H.*, 339 F.R.D. at 589.

### 3. *Typicality*

To meet Rule 23(a)(3)'s typicality requirement, the named class representatives must "possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348–49 (cleaned up); *see also Hernandez*, 209 F.R.D. at 671 ("The central inquiry in determining whether a proposed class has

'typicality' is whether the 'class representatives' claims have the same essential characteristics as the claims of the other members of the class.'") (quoting *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 428 (S.D. Fla. 1991)); *Acosta*, 326 F.R.D. at 700 ("The typicality analysis turns on 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct.'") (quoting *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla.2012)).   Similar to the commonality inquiry, if the claims or defenses of the class and the class representatives "arise from the same event or pattern or practice and are based on the same legal theory," typicality is satisfied. *Hernandez*, 209 F.R.D. at 671.   Factual differences between the claims of the named plaintiffs and the rest of the class are not alone sufficient to defeat typicality, unless they give rise to a conflict that "must be clear and must be such that the interests of the class are placed in significant jeopardy."   *Id*. at 671–72 (cleaned up) (quoting *Walco Invests. Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla.1996)).

Here, each of the named Plaintiff representatives for the Plaintiff Classes has suffered exactly the same injury – restrictions on, or outright denial of, access to transition-related care – as the members of the respective Class each seeks to represent, and they seek exactly the same declaratory and injunctive relief to redress

those injuries. Thus, there is nothing atypical about the named Plaintiffs' claims as compared to those of absent class members. Nor is there even the faintest hint of a conflict between the representatives' and class members' respective interests. Typicality is readily met here. *See G.H.*, 339 F.R.D. at 590 (typicality satisfied where the named plaintiffs' "claims and those of the class and subclass members arise from the same practices and seek the same remedies"); *Hernandez*, 209 F.R.D. at 672 ("Here, the claims of the named plaintiffs are typical of the claims of the proposed class members in that all have been denied their alleged right to adequate written notice and fair hearings when coverage of their prescription drugs is denied[.]").

### 4. *Adequacy*

Class certification is appropriate only where the named plaintiffs "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To pass this test, no substantial conflict of interest can exist between the named plaintiffs and the class, and proposed counsel to the class must be qualified, experienced and generally able to conduct the litigation on behalf of the proposed class. *G.H.*, 339 F.R.D. at 590; *Hernandez*, 209 F.R.D. at 673.

As discussed above, there are no disqualifying conflicts here between the named Plaintiffs and absent members of the Plaintiff Classes. All seek to enjoin the enforcement of the unconstitutional Transgender Medical Restrictions.

Furthermore, proposed counsel for the Plaintiff Classes have been prosecuting this action vigorously and have extensive experience and proficiency in the areas of civil rights and complex class action litigation.  (*See* Redburn Decl. ¶¶ 4-9.)  Rule 23's adequacy prong is met.

### D.   Certification Under Rule 23(b)(2) Is Appropriate

As the Supreme Court has noted, the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (cleaned up).  That standard is easily met here for the Plaintiff Classes, each of which is pursuing class-wide declaratory and injunctive relief against the unconstitutional Transgender Medical Restrictions, as applicable, that commonly injures their respective members.  As to each Class, the Court's ultimate decision on the merits of the claims will result in the relief sought being granted either as to all members or to none of them. *See*, *e.g.*, *Acosta*, 326 F.R.D. at 701–02 (granting certification under Rule 23(b)(2) because "the class-wide injunctive relief that may potentially be awarded in this action would address the common injuries shared by the class members"); *Florida Educ. Ass'n*, 2019 WL 82194093, at *6 (Rule 23(b)(2)'s "standard is easily met for the plaintiff's claims for injunctive and declaratory relief.  The defendants have authorized or paid bonuses to highly effective teachers on a ground generally applicable to all:  whether

they have qualifying SAT or ACT scores.  The claim that this is unlawful and should be enjoined is a paradigm of a claim properly certified under Rule 23(b)(2)."); *Hernandez*, 209 F.R.D. at 673 (where plaintiffs challenged a state policy that was "equally applicable to each class member of the proposed class," Rule 23(b)(2) applied because "[i]njunctive or declaratory relief settling the legality of the policy with respect to the class as whole is appropriate"); *Hoffer*, 323 F.R.D. at 699 ("Here, certification under Rule 23(b)(2) is appropriate because a single injunction or declaratory judgment *would* provide relief to each member of the proposed class."). Indeed, this case is exactly the type of civil rights action that Rule 23(b)(2) was intended to facilitate.  *Hernandez*, 209 F.R.D. at 673.

Furthermore, Courts in this District have refused to recognize a free-standing "necessity" requirement for class certification under Rule 23(b)(2).  *G.H.*, 339 F.R.D. at 591 (rejecting necessity requirement because it "would render Rule 23(b)(2) a dead letter"); *Hoffer*, 323 F.R.D. at 700 ("[C]lass actions need not be necessary.").  In any event, class certification is necessary here for the same reason this Court identified in *G.H.*:  Florida officials' repeated assertions in constitutional litigation "that an injunction entered by a district court in favor of the individual plaintiffs runs in favor only of the individual plaintiffs – that the officials remain free, in dealing with others, to continue the conduct held unconstitutional."  339 F.R.D. at 591; *see also Meza v. Marstiller*, Case No. 3:22-cv-783-MMH-LLL, 2023

WL 2648180, at *12 (M.D. Fla. Mar. 27, 2023) (declining to exercise discretion to deny class certification as unnecessary: "[T]his case presents a quintessential Rule 23(b)(2) class action claim.  Plaintiffs allege that a state policy, applicable to the entire class, is invalid on its face.  Notably, AHCA has not withdrawn this policy pending resolution of this lawsuit, nor has it stipulated that it will abide by the Court's ruling as to all putative class members.").  Against this backdrop, Rule 23(b)(2) certification provides the only mechanism to ensure all members of the Plaintiff Classes obtain the benefits of any declaratory or injunctive relief entered by the Court to remedy their common injuries.

### E. The Undersigned Counsel Should Be Appointed to Represent the Plaintiff Classes Under Rule 23(g)

Finally, appointment of counsel for a certified class requires the Court to consider (1) counsel's work in investigating potential claims, (2) counsel's experience in class actions, other types of complex civil litigation and the claims asserted in the action, and (3) the resources counsel will commit to representing the class.  See FED. R. CIV. P. 23(g).  As explained in the accompanying Redburn Declaration, the undersigned counsel have performed high quality work in litigating this matter to date, have extensive experience in civil rights and class litigation, and are more than adequately resourced to litigate the case.  Plaintiffs' motion to appoint the undersigned as counsel to the Plaintiff Classes should be granted.  *See*, *e.g.*, *Acosta*, 326 F.R.D. at 702 ("In consideration of the above factors, and the substantial

efforts they have undertaken in this litigation to date, the Court finds it appropriate to appoint counsel for named Plaintiffs as class counsel in this action.").

## IV.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for class certification in its entirety, certify the Plaintiff Classes defined herein, and appoint the Class Representatives and Class Counsel.

## REQUEST FOR ARGUMENT

Pursuant to Local Rule 7.1(K), Plaintiffs respectfully request oral argument on this motion, estimating up to two hours for a non-evidentiary hearing.

Respectfully submitted this 31st day of July, 2023.

**LOWENSTEIN SANDLER LLP**

By: */s/ Thomas E. Reburn, Jr.*
**Thomas E. Redburn, Jr.***
NY Bar No. 5822036
**Maya Ginsburg***
NY Bar No. 5128152
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
tredburn@lowenstein.com
mginsburg@lowenstein.com

**NATIONAL CENTER FOR LESBIAN RIGHTS**

**Christopher F. Stoll***
CA Bar No. 179046
**Kelly Jo Popkin***
NY Bar No. 5698220
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Tel. 415-365-1320
cstoll@nclrights.org
kpopkin@nclrights.org

**HUMAN RIGHTS CAMPAIGN FOUNDATION**

**Cynthia Cheng-Wun Weaver\***
NY Bar No. 5091848
**Jason Starr\***
NY Bar No. 5005194
**Ami Patel\***
CA No. 325647
1640 Rhode Island Avenue NW
Washington, D.C. 20036
(202) 993-4180
Cynthia.Weaver@hrc.org
Jason.Starr@hrc.org
Ami.Patel@hrc.org

**SOUTHERN LEGAL COUNSEL**

**Simone Chriss**
Florida Bar No. 124062
**Chelsea Dunn**
Florida Bar No. 1013541
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**GLBTQ LEGAL ADVOCATES & DEFENDERS**

**Jennifer Levi\***
MA Bar No. 562298
**Chris Erchull\***
MA Bar No. 690555
18 Tremont, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
cerchull@glad.org

\* Admitted by *pro hac vice*

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF WORD COUNT</u>

According to Microsoft Word, the word-processing system used to prepare this Motion and Memorandum, there are 779 total words contained within the Motion, and there are 7,422 words contained within the Memorandum of Law.

<u>*/s/ Thomas E. Redburn, Jr.*</u>

## CERTIFICATE OF SATISFATION OF <u>ATTORNEY CONFERENCE REQUIREMENT</u>

Pursuant to Local Rule 7.1(B), counsel for the Plaintiffs conferred with counsel for the Defendants about this motion on July 12, 2023, during the negotiations over the Rule 26(f) report.   Counsel for Defendants indicated that Defendants may oppose the relief sought.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 31, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

<u>*/s/ Thomas E. Redburn, Jr.*</u>
Thomas E. Redburn, Jr.