IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JANE DOE, individually and on
behalf of her minor daughter,
SUSAN DOE, et al.,

      Plaintiffs,

v.                             Case No. 4:23-cv-000114-RH-MAF

JOSEPH A. LADAPO, in his
official capacity as Florida's
Surgeon General of the Florida
Department of Health, et al.,

      Defendants.

_____/

## CONSOLIDATED ANSWER BY ALL DEFENDANTS TO PLAINTIFFS' THIRD AMENDED COMPLAINT

Surgeon General Ladapo, the Florida Board of Medicine, the Florida Board of Osteopathic Medicine, and State Attorney Gladson respond to Plaintiffs' third amended complaint. Any allegation not specifically admitted is denied.

### Preliminary Statement

1.    Admitted that this case is a constitutional challenge; otherwise, denied.

2.    Admitted that SB 254 took effect in May 2023, that the bill directed the State Medical Boards to implement rules, and that the bill imposes penalties on certain actions; otherwise, denied.

1

3.     Admitted that the State Medical Boards promulgated rules concerning treatments for gender dysphoria; otherwise, denied.

4.     Denied.

5.     Denied.

6.     Admitted that Plaintiffs seek declaratory and injunctive relief; denied that Plaintiffs are entitled to that relief, and denied that Plaintiffs will suffer injury without such relief.

## Parties

### I.

7.     Without knowledge; therefore, denied.

8.     Without knowledge; therefore, denied.

9.     Without knowledge; therefore, denied.

10.    Without knowledge; therefore, denied.

11.    Without knowledge; therefore, denied.

12.    Without knowledge; therefore, denied.

13.    Without knowledge; therefore, denied.

### II.

14.    Without knowledge; therefore, denied.

15.    Without knowledge; therefore, denied.

16.    Without knowledge; therefore, denied.

17.    Without knowledge; therefore, denied.

## III.

18.     Denied as to the characterization of the medical regulations as "Transgender Medical Restrictions." Otherwise, admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Denied. Ms. Garcia is no longer a board member.

33.     Admitted.

34.     Admitted.

35.     Admitted.

36.     Admitted.

37.     Admitted.

38.     Admitted.

39.     Admitted.

40.     Admitted.

41.     Denied that board members can individually promulgate rules and individually take disciplinary actions. *See* Fla. Stat. § 456.011; Fla. Stat. § 456.073. Otherwise, admitted.

42.     Denied that board members can individually promulgate rules and individually take disciplinary actions. *See* Fla. Stat. § 456.011; Fla. Stat. § 456.073. Otherwise, admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

## **Jurisdiction and Venue**

46.     Admitted to the extent that paragraph 46 states the relief Plaintiffs seek; denied that Plaintiffs are entitled to the relief; denied that federal law has been violated; and denied as to the characterization of the medical regulations as "Transgender Medical Restrictions."

47.     Admitted.

48.     Denied that Plaintiffs' federal rights have been violated; otherwise, admitted.

4

49.     Admitted.

50.     Admitted that venue is proper; otherwise, denied.

51.     Admitted.

52.     Admitted.

## Factual Allegations

### I.

53.     Denied.

54.     Admitted to the extent that gender dysphoria is a medical diagnosis that arises from an incongruence between an individual's sex and gender identity; admitted that the incongruence can cause clinical distress; admitted that the DSM-5 contains diagnosing criteria for gender dysphoria; otherwise, denied.

55.     Without knowledge; therefore, denied.

56.     Without knowledge; therefore, denied.

57.     Denied.

58.     Admitted that certain organizations promulgated, and that certain individuals in medical organizations approved, recommendations on the treatments for gender dysphoria; otherwise, denied.

59.     Admitted that WPATH promulgated recommendations on the treatments for gender dysphoria; otherwise, denied.

60.     Admitted that the Endocrine Society promulgated recommendations on the treatments for gender dysphoria; otherwise, denied.

61.    Admitted to the extent that certain individuals who are in the referenced medical organizations approve of WPATH's and the Endocrine Society's recommendations on treatments for gender dysphoria; otherwise, denied.

62.    Admitted that there are treatments for gender dysphoria and that the treatments have several components; otherwise, denied.

63.    Denied.

64.    Admitted that WPATH produces a "standards of care" that outlines its preferred treatments for gender dysphoria; otherwise, denied.

65.    Admitted that certain medical professionals support social transition, as described in paragraph 65; otherwise, denied.

66.    Admitted that certain medical professionals support the treatments for gender dysphoria described in paragraph 66; otherwise, denied.

67.    Admitted.

68.    Admitted to the extent that certain medical professionals and WPATH support puberty-blocking treatments for gender dysphoria, as described in paragraph 68; otherwise, denied.

69.    Admitted that certain medical professionals support cross-sex-hormone treatments for gender dysphoria; otherwise, denied.

70.    Admitted that certain medical professionals support surgery treatments for gender dysphoria; otherwise, denied.

71.    Denied.

72.     Denied.

73.     Denied.

74.     Admitted.

75.     Denied that NPs are qualified to diagnose gender dysphoria, and denied that "the same limitations imposed on physicians" when "prescribing medications" apply to NPs; otherwise, admitted.[1]

76.     Admitted to the extent that NPs can administer *certain* services safely and efficiently; otherwise, denied.

77.     Denied.

78.     Denied.

79.     Without knowledge; therefore, denied.

80.     Admitted that the figures referenced in paragraph 80 are roughly accurate; the remaining allegations in the paragraph are without knowledge, and therefore denied.

## II.

81.     Admitted to the extent that Surgeon General Ladapo sent a letter to the State medical boards in June 2022 regarding standards of care for treatments for gender dysphoria; otherwise, denied.

---

[1] Note that the Florida Board of Medicine and the Florida Board of Osteopathic Medicine take no position concerning the appropriate standard or scope of practice for APRNs; a separate governmental entity regulates the practice of nursing.

82.     Denied that the rules are "categorical ban[s] on all treatment of gender dysphoria"; otherwise, admitted.

83.     Admitted.

84.     Admitted.

85.     Admitted.

86.     Admitted.

87.     Admitted.

88.     Admitted.

89.     Denied that the rules are "transgender medical bans"; otherwise, admitted.

90.     Admitted.

91.     Admitted.

92.     Denied that the rules are "bans"; otherwise, admitted.

93.     Denied that the rules are "bans"; denied that the use of hormones or puberty blockers for purposes of treating gender dysphoria is medically necessary for minors; otherwise, admitted.

94.     Denied.

95.     Denied.

## III.

96.     Admitted.

97.     Admitted that SB 254 was signed into law in May 2023; otherwise, the statutory provisions referenced in paragraph 97 speak for themselves.

8

98.   The statutory provisions speak for themselves.

99.   The statutory provisions speak for themselves.

100.   The statutory provisions speak for themselves.

101.   The statutory provisions speak for themselves.

102.   The statutory provisions speak for themselves.

103.   The rules speak for themselves.

104.   The statutory provisions speak for themselves.

105.   The statutory provisions speak for themselves.

106.   The statutory provisions speak for themselves.

107.   Denied.

108.   The statutory and regulatory provisions speak for themselves; otherwise, denied.

109.   The statutory and regulatory provisions speak for themselves; otherwise, denied.

110.   The statutory and regulatory provisions speak for themselves; otherwise, denied.

111.   Without knowledge; therefore, denied.

112.   The statutory and regulatory provisions speak for themselves; otherwise, denied.

113.   Denied that SB 254 "prevent[s] transgender patients from receiving medical care." Otherwise, without knowledge; therefore, denied.

114.    Denied as to the characterization of the medical regulations as "Transgender Medical Restrictions." Otherwise, without knowledge; therefore, denied.

**IV.**

115.    Without knowledge; therefore, denied.

116.    Without knowledge; therefore, denied.

117.    Without knowledge; therefore, denied.

118.    Without knowledge; therefore, denied.

119.    Without knowledge; therefore, denied.

120.    Without knowledge; therefore, denied.

121.    Without knowledge; therefore, denied.

122.    Without knowledge; therefore, denied.

123.    Without knowledge; therefore, denied.

124.    Without knowledge; therefore, denied.

125.    Without knowledge; therefore, denied.

126.    Without knowledge; therefore, denied.

127.    Without knowledge; therefore, denied.

128.    Without knowledge; therefore, denied.

129.    Without knowledge; therefore, denied.

130.    Without knowledge; therefore, denied.

131.    Without knowledge; therefore, denied.

132.    Without knowledge; therefore, denied.

133.   Without knowledge; therefore, denied.

134.   Without knowledge; therefore, denied.

135.   Without knowledge; therefore, denied.

136.   Without knowledge; therefore, denied.

137.   Without knowledge; therefore, denied.

138.   Without knowledge; therefore, denied.

139.   Without knowledge; therefore, denied.

140.   Without knowledge; therefore, denied.

141.   Without knowledge; therefore, denied.

142.   Without knowledge; therefore, denied.

143.   Without knowledge; therefore, denied.

144.   Without knowledge; therefore, denied.

145.   Without knowledge; therefore, denied.

146.   Without knowledge; therefore, denied.

147.   Without knowledge; therefore, denied.

148.   Without knowledge; therefore, denied.

149.   Without knowledge; therefore, denied.

150.   Without knowledge; therefore, denied.

151.   Without knowledge; therefore, denied.

152.   Without knowledge; therefore, denied.

153.   Without knowledge; therefore, denied.

154.   Without knowledge; therefore, denied.

155.   Without knowledge; therefore, denied.

156.   Without knowledge; therefore, denied.

157.   Without knowledge; therefore, denied.

158.   Without knowledge; therefore, denied.

159.   Without knowledge; therefore, denied.

160.   Without knowledge; therefore, denied.

161.   Without knowledge; therefore, denied.

162.   Without knowledge; therefore, denied.

163.   Without knowledge; therefore, denied.

164.   Without knowledge; therefore, denied.

165.   Without knowledge; therefore, denied.

166.   Without knowledge; therefore, denied.

167.   Without knowledge; therefore, denied.

168.   Without knowledge; therefore, denied.

169.   Without knowledge; therefore, denied.

170.   Without knowledge; therefore, denied.

171.   Without knowledge; therefore, denied.

172.   Without knowledge; therefore, denied.

173.   Without knowledge; therefore, denied.

## Class Action Allegations

### Class 1

174.   Denied that class certification is appropriate.

175.   Denied.

176.   Denied; this paragraph isn't a factual allegation.

177.   Denied.

178.   Denied.

179.   Denied.

### Class 2

180.   Denied that class certification is appropriate.

181.   Denied.

182.   Denied; this paragraph isn't a factual allegation.

183.   Denied.

184.   Denied.

185.   Denied.

### Class 3

186.   Denied that class certification is appropriate.

187.   Denied.

188.   Denied; this paragraph isn't a factual allegation.

189.   Denied.

190.   Denied.

191.    Denied.

## Claims for Relief

### Count I

192.    Defendants incorporate paragraphs 1-191 in this answer.

193.    Admitted that Plaintiffs bring Count I against all Defendants; denied that relief under Count I is warranted.

194.    Admitted that the Fourteenth Amendment protects certain rights; admitted that the quotation in paragraph 150 comes from *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality); otherwise, denied.

195.    Denied.

196.    Denied.

197.    Denied.

### Count II

198.    Defendants incorporate paragraphs 1-191 in this answer.

199.    Admitted that Plaintiffs bring Count II against all Defendants; denied that relief under Count II is warranted.

200.    Admitted.

201.    Denied.

202.    Denied.

203.    Denied.

204.    Denied.

205.   Denied.

206.   Denied.

207.   Denied.

## Relief Requested by Plaintiffs

Wherefore,

(1)   Denied that such relief is warranted.

(2)   Denied that such relief is warranted.

(3)   Denied that such relief is warranted.

(4)   Denied that such relief is warranted.

(5)   Denied that such relief is warranted.

(6)   Denied that such relief is warranted.

Dated: August 10, 2023                    Respectfully submitted by:

**Ashley Moody**                          /s/ Mohammad O. Jazil
ATTORNEY GENERAL                          Mohammad O. Jazil (FBN 72556)
                                          Gary V. Perko (FBN 855898)
/s/ Joseph E. Hart                        Michael Beato (FBN 1017715)
**Joseph E. Hart** (FBN 0124720)          HOLTZMAN VOGEL BARAN
COUNSELOR TO THE ATTORNEY                 TORCHINSKY & JOSEFIAK PLLC
GENERAL                                   119 S. Monroe St., Suite 500
Office of the Attorney General            Tallahassee, FL 32301
The Capitol, Pl-01                        (850) 270-5938
Tallahassee, Florida 32399-1050           mjazil@holtzmanvogel.com
(850) 414-3300                            gperko@holtzmanvogel.com
(850) 410-2672 (fax)                      mbeato@holtzmanvogel.com
Joseph.Hart@myfloridalegal.com

*Counsel for the Surgeon General, the*    *Counsel for the Surgeon General, the Department*
*Department of Health, and State*         *of Health, the Boards of Medicine, and the*
*Attorney Gladson*                        *individual Board Members*

## CERTIFICATE OF SERVICE

I certify that, on August 10, 2023, this consolidated answer was filed through the

Court's CM/ECF system, which will send a notice of electronic filing to all counsel of

record.

                                          /s/ Mohammad O. Jazil
                                          Mohammad O. Jazil