# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

JANE DOE et al.,

      Plaintiffs,

v.                          CASE NO. 4:23cv114-RH-MAF

JOSEPH A. LADAPO et al.,

      Defendants.

_____/

## ORDER CERTIFYING CLASSES

      This proposed class action presents a constitutional challenge to Florida statutes and rules that prohibit transgender *minors* from receiving specific kinds of medical treatment. Grandfather provisions allow some minors to continue receiving the treatment but only with restrictions. The statute and rules restrict, but do not prohibit, analogous medical care for transgender *adults*. The most important restriction is a requirement for in-person treatment by a physician—no telehealth, even by a physician, and no treatment, even in person, only by a different kind of healthcare professional without a physician.

      The named plaintiffs are four transgender adults and the parents of seven transgender minors. The parents assert the claims of their transgender children. The

adult plaintiffs and the parents of grandfathered minors challenge the restrictions on treatment. The parents of minors who are not grandfathered challenge the prohibition on treatment.

The defendants, all in their official capacities, are the Florida Surgeon General, the Florida Board of Medicine and its members, the Florida Board of Osteopathic Medicine and its members, and the State Attorney for Florida's Fifth Judicial Circuit. Florida's other 19 State Attorneys have agreed to be bound by the rulings for or against the State Attorney for the Fifth.

The plaintiffs have moved to certify three classes. This order grants the motion but reconfigures the classes to include a class of adults, a class of minors, and a subclass of minors who are not grandfathered.

### *The Merits*

A class-certification motion does not call for a decision on the merits, but the required analysis may "entail some overlap with the merits . . . . That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Here, the merits have been discussed at some length in orders granting one motion for a preliminary injunction and denying another. No further discussion is needed in connection with class certification.

It is enough to say this: one can reasonably argue both sides of the constitutional issues, but one cannot reasonably deny that the issues are substantial.

Indeed, challenges to similar restrictions on transgender care for minors already present a circuit conflict. *Compare Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) (affirming a preliminary injunction against enforcement of a prohibition of care to minors) *with Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205 (11th Cir. 2023) (reversing a similar preliminary injunction) *and L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023) (same).

### *Class Certification*

Federal Rule of Civil Procedure 23 governs class certification. Before turning to the required "rigorous analysis" of the specific prerequisites to certification, *see, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009), a more general observation is in order: this is the very paradigm of a case appropriate for certification under Rule 23(b)(2). That provision applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The defendants are state officials whose duties include enforcing the prohibition and restrictions on the medical treatment at issue. They have acted, and will continue to act unless enjoined, on grounds that apply generally to the class: the statute and rules that the plaintiffs assert are unconstitutional.

A party who seeks class certification has the burden to establish all four requirements set out in Rule 23(a) and at least one of the requirements set out in Rule 23(b). *See, e.g.*, *Vega*, 564 F.3d at 1265; *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

### Rule 23(a)

The Rule 23(a) elements are often referred to as "numerosity, commonality, typicality, and adequacy of representation." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (*quoting Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187–88 (11th Cir. 2003)). This order addresses each in turn.

Rule 23 refers to a class "representative," not to a named plaintiff, because the rule applies to defendant classes as well as plaintiff classes. This case involves only plaintiff classes, so this order uses "representative" and "named plaintiff"— and sometimes simply "plaintiff"—interchangeably.

**Numerosity.** The numerosity element requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). A named plaintiff "need not show the precise number of members in the class."

*Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). But numerosity is not satisfied by speculative inferences. *Vega*, 564 F.3d at 1267.

What matters here is the number of transgender individuals in each proposed class. If, as set out below, there should be two classes—one for adults and one for minors, with an additional subclass of minors—the issue is the number of transgender adults or minors in Florida who seek the kind of care at issue. The record shows that there are thousands of transgender adults and thousands of transgender minors in Florida. ECF No. 121-6 at 11. And the record shows that roughly 65% of transgender individuals seek hormone therapy, while roughly 8% seek gender-affirming surgery. *See* Decl. of Dr. Kellan E. Baker, ECF No. 175-6 at 6 ¶ 14 in *Dekker v. Weida*, No. 4:22cv325 (N.D. Fla. 2023) (accepted as part of this record by stipulation) (citing his peer-reviewed article *Utilization and Costs of Gender-Affirming Care in a Commercially Insured Transgender Population*, 50 J. L. Med. & Ethics 456 (2022)). These numbers are imprecise but accord with what is obvious anyway: the statutes and rules at issue affect far more than enough adults and minors to meet the numerosity requirement. In their memorandum in response to the class-certification motion, the defendants did not assert the contrary.

The plaintiffs have met the numerosity requirement.

*Commonality.* The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). A common contention must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Courts should not fully consider the merits at the certification stage, but courts do look to the elements of a claim to determine whether commonality exists. *See, e.g., Vega*, 564 F.3d at 1272 (looking at the elements of a breach of contract claim to establish commonality).

This case will turn almost entirely on common issues with common answers. The plaintiffs assert the statute and rules are subject to strict or intermediate scrutiny; for each challenged provision, the level of scrutiny will be the same for every affected class member, without exception. The plaintiffs assert the statute and rules are not supported by a sufficient state interest as measured under whatever level of scrutiny applies; for each challenged provision, the sufficiency of the state interest will be the same for every affected class member, without exception. The plaintiffs assert the statute and rules were the product of discriminatory animus; that will be true or not true for every class member, without exception. *See Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir.

2022) ("[A] disparate impact on a group offends the Constitution when an otherwise neutral policy is motivated by purposeful discrimination."); *Thompson v. Alabama*, 65 F.4th 1288, 1297 (11th Cir. 2023) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). The factors a court properly considers to determine animus will be the same—with the same answer—for every class member. *See Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1321 (11th Cir. 2021) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977)).

The defendants assert, though, that providing class relief will require individual determinations of the circumstances and appropriate care of each individual. Not so. Commonality requires common questions with common answers and is not defeated just because a case also presents individual issues. Indeed, nearly all class actions potentially present individual questions about whether individuals qualify for whatever classwide relief may ultimately be granted. Thus, for example, class actions in the decade following enactment of the Civil Rights Act of 1964 resulted in injunctions desegregating large public and private employers, despite individual questions about whether any individual class member would qualify for the jobs or pay at issue:

> Once class-wide discrimination has been demonstrated to result in disproportional earnings, a class-wide decision that back pay is appropriate can be discerned without deciding which members of the class are entitled to what amounts. This is no different than

> affirmative injunctive relief, in the form of red circling or advance
> entry, which on remand will be applied to particular individuals
> and not the whole class.

*Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 257 (5th Cir. 1974) (Tuttle, J.)

(citations omitted).

      If this action results in a ruling that the challenged statute and rules are

unconstitutional, the individual class members will be able to seek individualized

medical care, just as they could do before the statute and rules were adopted. The

class members—and for minors, the parents—will decide, in consultation with

their healthcare professionals, what medical care to obtain. Except to the extent

necessary to prevent state officials from acting in violation of the United States

Constitution, the court will not address individualized treatment issues.

      The plaintiffs have met the commonality requirement.

      ***Typicality.*** The typicality element requires that "the claims or defenses of

the representative parties are typical of the claims or defenses of the class." Fed. R.

Civ. P. 23(a)(3). The plaintiffs must "possess the same interest and suffer the same

injury as the class members." *Dukes*, 564 U.S. at 348–49 (quoting *E. Tex. Motor

Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

      Here each named plaintiff has the same interest and has suffered the same

injury as the class the named plaintiff will represent. The interest is to obtain

appropriate medical care related to transgender identity and, for the parents, to

direct their children's medical care. The injury is the state's prohibition of that care for minors who are not grandfathered and, for all plaintiffs, restrictions on that care.

The minors Susan Doe, Gavin Goe, and Lisa Loe are not grandfathered and so are affected by the prohibition. If they obtain the requested relief from the prohibition, they will be affected by the restrictions, so they can—perhaps must— pursue their challenge to the restrictions as part of this case. The minors Freya Foe and Paul Poe are grandfathered and so are affected by the restrictions, not the prohibition. The parents' interests track those of their children. The adult plaintiffs are affected by the restrictions.

Each named plaintiff's claims are typical of the class the plaintiff will represent. The plaintiffs have met the typicality requirement.

*Adequacy.* The final Rule 23(a) requirement is that the named plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This encompasses two separate inquiries: whether any substantial conflict of interest exists between the named plaintiff and the class and whether the named plaintiffs will adequately prosecute the action. *See, e.g.*, *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Class counsel also must be adequate. *See* Fed. R. Civ. P. 23(g).

Here there are no conflicts between the named plaintiffs and the class. The named plaintiffs are adequate representatives. Their attorneys are adequate class counsel. The plaintiffs have met the adequacy requirement.

## *Rule 23(b)(2)*

Having met the requirements of Rule 23(a), the plaintiffs must also meet one of the requirements of Rule 23(b). Under Rule 23(b)(2), class treatment is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

This case presents a proper (b)(2) class. The parties opposing the class—the defendants—will, unless enjoined, enforce the challenged statute and rules. They will do this because the statute and rules require it—a ground that applies generally to the classes. The plaintiffs have met the 23(b)(2) conditions.

## *Ascertainability*

Rule 23(a) does not explicitly speak to "ascertainability"—to whether the members of the class can be presently ascertained. The Eleventh Circuit recently said, in a case involving a proposed 23(b)(3) class, that ascertainability is an "implied prerequisite" to certification. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). The same is not true, however, for a (b)(2) class. *See*

*Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) ("It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained."). *Carpenter* is binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Because *Cherry* and *Carpenter* involve different parts of Rule 23, their *holdings* apparently are not in conflict. And the different treatment is understandable: ascertainability presents a much different issue under Rule 23(b)(3) than under Rule 23(b)(2). But if the decisions were deemed in conflict, *Carpenter*, as the prior decision, would control. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020) ("Our adherence to the prior-panel rule is strict, but when there are conflicting prior panel decisions, the oldest one controls"); *see also Jones v. DeSantis*, No. 4:19-cv-300-RH, 2020 WL 5646124, *5–6 (N.D. Fla. Apr. 7, 2020) (adhering to *Carpenter*).

None of this matters here. These classes are ascertainable. They are at least as ascertainable as untold dozens if not hundreds of class actions in the 1960s and 1970s through which district courts in the old Fifth Circuit, including in Florida, desegregated the South. Indeed, the same could be said of the entire Rule 23 analysis of this action. This action presents claims of discrimination on new grounds—transgender status, not race or gender—but the case is, at bottom, another in a long line of cases alleging unconstitutional discrimination by state

actors. Cases like this have long been adjudicated through class actions, precisely as the drafters of Rule 23 intended. Better to have one action and resolve the dispute for all concerned.

## *Class Definition*

The affected individuals are transgender Florida residents who seek medical care of the kind at issue: puberty blockers, cross-sex hormones, gender-affirming surgery. The individuals need not suffer gender dysphoria; the statute and rules prohibit or impose conditions on these treatments regardless of whether the patient is or is not dysphoric. *See* Fla. Stat. §§ 456.001(9)(a) (defining "sex-reassignment prescriptions or procedures" without reference to dysphoria) & 456.52 (imposing the prohibition and other restrictions without reference to dysphoria).

The affected individuals can be readily divided into two groups: adults and minors. All the adults are affected by challenged conditions that apply to adults. All the minors are or may be affected by challenged conditions that apply to minors. This is so because the grandfathered minors are affected now, and the others will be affected if they prevail on their challenge to the prohibition of these treatments. The challenged prohibition affects only the minors who have not been grandfathered, so they comprise a proper subclass.

The defendants seem to suggest that every class representative and every class member must be affected in the same way by the same provisions, so that, for

example, if one individual already gets treatment in person from an advanced registered nurse practitioner, the individual cannot be a representative for a class that challenges not only the physician-only condition but also the in-person condition. Otherwise, the defendants suggest, they will not know who challenges what and will not have a fair opportunity to present their defense. This is wrong, as addressed in the commonality section of this order.

Properly understood, this is a case-management problem no different from case-management issues presented in non-class actions. It is always necessary to define the issues and to try a case efficiently, with each side having a full and fair opportunity to take its best hold. The parties should come to the pretrial conference prepared to make this happen.

If the plaintiffs prevail, relief will be tailored so that directly affected individuals obtain their constitutional due. No more and no less. The classes as certified by this order will allow that to happen and will reduce both unnecessary complication in this action and unnecessary duplication in other litigation.

### *Conclusion*

For these reasons,

IT IS ORDERED:

1. The plaintiffs' class-certification motion, ECF No. 120, is granted in part.

2. Two classes and a subclass are certified:

(a)  The first class consists of all transgender adults in Florida who seek gender-affirming treatment with puberty blockers, cross-sex hormones, or surgery.

(b)  The second class consists of all transgender minors in Florida who seek gender-affirming treatment with puberty blockers or cross-sex hormones and their parents.

(c)  The subclass—a subset of the second class—consists of all transgender minors in Florida who seek but are prohibited by state law from obtaining gender-affirming treatment with puberty blockers or cross-sex hormones and their parents.

3. The class representatives for the first class are named plaintiffs Lucien Hamel, Olivia Noel, Rebecca Cruz Evia, and Kai Pope.

4. The class representatives for the second class are named plaintiffs Jane Doe, individually and on behalf of Susan Doe; Fiona Foe, individually and on behalf of Freya Foe; Gloria Goe, individually and on behalf of Gavin Goe; Linda Loe, individually and on behalf of Lisa Loe; and Patricia Poe, individually and on behalf of Paul Poe.

5. The class representatives for the subclass are Jane Doe, individually and on behalf of Susan Doe; Gloria Goe, individually and on behalf of Gavin Goe; and Linda Loe, individually and on behalf of Lisa Loe.

6. Class counsel are Thomas Redburn, Simone Chriss, and Jennifer Levi.

SO ORDERED on October 18, 2023.

s/Robert L. Hinkle
United States District Judge