# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| JANE DOE et al., | |
|     Plaintiffs, | Civil No. 4:23-cv-00114-RH-MAF |
| v. | |
| JOSEPH A. LADAPO et al., | |
|     Defendants. | |

## POST-TRIAL MEMORANDUM OF LAW

Plaintiffs respectfully submit this post-trial memorandum of law to clarify three key principles governing this Court's analysis of their equal protection claim. First, under the disparate impact doctrine, Plaintiffs need not prove an improper purpose to discriminate was the sole or even primary motivation behind a challenged policy. As the Supreme Court recognized in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, "[r]arely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern[.]" 429 U.S. 252, 265 (1977). Thus, "[w]hen there is a proof that a discriminatory purpose has been *a* motivating factor in the decision, … judicial deference is no longer justified." *Id*. at 265-66 (emphasis added); *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 277 (1979) ("Discriminatory intent

is simply not amenable to calibration. It either is a factor that has influenced the legislative choice or it is not.").[1]

Second, in proving that an illicit consideration played a motivating role, Plaintiffs need not show that decisionmakers harbored subjective animosity toward the targeted group. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 564. "Frequently the most probative evidence of intent will be objective evidence of what actually happened," *Washington v. Davis*, 426 U.S. 229, 253 (1976) (Stevens, J., concurring), including the degree and foreseeability of any disproportionate impact as well as the availability of less discriminatory alternatives. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State,* 66 F.4th 905, 922 (11th Cir. 2023).

As the Supreme Court and the Eleventh Circuit have stressed, the greater and more foreseeable the adverse disparate impact on a particular group, the more likely

---

[1] This case, like *Feeney*, involves a classification resulting in a disparate impact on a sex-based group, which, if the discrimination is purposeful, calls for the same heightened scrutiny applied to a facially sex-based classification. 442 U.S. at 273 (any law either "overtly or covertly designed" to discriminate based on sex "would require an exceedingly persuasive justification to withstand a constitutional challenge under the Equal Protection Clause of the Fourteenth Amendment."); *see also Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1229-30 (11th Cir. 2023) ("[R]egulation of a course of treatment that only gender nonconforming individuals can undergo" is subject to heightened scrutiny if "the regulation [is] a pretext for invidious discrimination against such individuals.").

purposeful discrimination played a role. *See Arlington Heights*, 429 U.S. at 564 (where "a clear pattern [of disparate impact] … emerges," "[t]he evidentiary inquiry is then relatively easy"); *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021) (noting that the degree of disparate impact is highly relevant and finding plaintiffs showed only that "minority voters in Alabama possess photo IDs at a slightly lower rate than white Alabama voters"); *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir. 2022) (finding insufficient basis to infer discriminatory intent where defendant "did not even have transgender students in mind" and any disparate impact was "unforeseen when the bathroom policy was implemented"); *League of Women Voters*, 66 F.4th at 935 (rejecting disparate impact claim where evidence of disparate impact was "flimsy"). Were that not the case, lawmakers could avoid meaningful scrutiny of even the starkest and most foreseeably adverse disparate impact on a politically vulnerable group simply by asserting a non-discriminatory justification—subverting the doctrine's purpose. "If any explanation, no matter how insubstantial and no matter how great its disparate impact, could rebut a prima facie inference of discrimination provided only that the explanation itself was not facially discriminatory, 'the Equal Protection Clause "would be but a vain and illusory requirement."'" *Hernandez v. New York*,

3

500 U.S. 352, 377 (1991) (Stevens, J., dissenting) (quoting *Batson v. Kentucky*, 476 U.S. 79, 98 (1986)).[2]

Finally, neither "purposeful discrimination" nor even "animus" equates to subjective hatred or animosity, nor need they reflect subjective malice or a self-conscious desire to harm. "We do not think that the 'animus' requirement can be met only by maliciously motivated, as opposed to assertedly benign (though objectively invidious), discrimination." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269-70 (1993). "Prejudice … rises not from malice or hostile animus alone. It

---

[2] Given the importance of the degree and foreseeability of a law's disparate impact in ascertaining intent, it bears emphasis that an overwhelming majority of federal courts considering challenges to laws like SB 254 have concluded that, on their face, such measures plainly and intentionally discriminate based on sex. While the Eleventh Circuit rejected the conclusion that such laws *facially* discriminate based on sex, the analyses in these decisions are still highly relevant insofar as they underscore that these laws, at a minimum, establish a clear pattern of sex-based discrimination and that none of their asserted justifications have merit. *See, e.g.*, *Poe v. Labrador*, 2023 WL 8935065 (D. Idaho Dec. 26, 2023); *Koe v. Noggle*, 2023 WL 5339281 (N.D. Ga. Aug. 20, 2023), *stayed pending Mot. for Recons.* (N.D. Ga. Sept. 5, 2023); *Brandt v. Rutledge*, 551 F.Supp.3d 882 (E.D. Ark. 2021), *aff'd*, 47 F.4th 661 (8th Cir. 2022), *permanently enjoined*, 2023 WL 4073727 (E.D. Ark. June 20, 2023), *appeal docketed*, No. 23-2681 (8th Cir. July 21, 2023); *L.W. v. Skrmetti*, 2023 WL 4232308 (M.D. Tenn. June 28, 2023), *rev'd*, 83 F.4th 460 (6th Cir. 2023); *Doe v. Thornbury*, 2023 WL 4230481 (W.D. Ky. June 28, 2023), *vacated*, *Skrmetti*, 83 F.4th 460; *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 2023 2023 WL 4054086 (S.D. Ind. June 16, 2023), *appeal docketed*, No. 23-2366 (7th Cir. July 12, 2023); *Doe v. Ladapo*, 2023 WL 3833848 (N.D. Fla. June 6, 2023), *appeal docketed*, No. 23-12159 (11th Cir. June 27, 2023); *Eknes-Tucker v. Marshall*, 603 F.Supp.3d 1131 (M.D. Ala. 2022), *rev'd*, 80 F.4th 1205 (Pet. for Reh'g En Banc pending). *But see Poe v. Drummond*, No. 23-cv-177, 2023 WL 6516449 (N.D. Okla. Oct. 5, 2023), *appeal docketed*, No. 23-5510 (10th Cir. Oct. 10, 2023) (relying on *Skrmetti* and *Eknes-Tucker*).

may result as well from insensitivity caused by simple want of careful, rational reflection or from some instinctive mechanism to guard against people who appear to be different in some respects from ourselves." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001) (Kennedy, J., concurring). As history has shown, sex-based discrimination has often been justified based on assertedly benign motivations. *See, e.g.*, *United States v. Virginia*, 518 U.S. 515, 535-56 (1996); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 728 (1982) ("[T]he mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme.").

These principles strongly support Plaintiffs' claim that SB 254 and the Board rules were motivated at least in part by purposeful discrimination and thus warrant heightened scrutiny. As Defendants concede, the disparate impact of these measures on transgender people could scarcely be starker: the prohibition of transition-related care for transgender minors and the restrictions on such care for transgender adults fall exclusively on transgender people. (Pl. Tr. Brief, ECF No. 191, at 73.) That disparate impact was not merely foreseen; it was at least in part the intended result of these measures, which the record shows were designed to discourage transgender minors and adults from undergoing gender transition—*i.e.*, from being transgender. This is true even if Defendants can point to evidence showing that the goals of some decisionmakers were also politically motivated or purportedly benign.

As discussed with the Court during closing argument, the record is replete with evidence that decisionmakers knew and intended that the statute and the Board rules would have an adverse effect on transgender people and were designed to bar care for minors and restrict it for adults. In addition, the explanations offered for them are so far afield from any objectively demonstrable concerns rooted in either health or safety, the only reasonable inference is that the statute and rules were motivated, at least in part, by disapproval of, or discomfort with, transgender people and the decisionmakers' intent, including the Legislature and the Boards of Medicine, to discourage transgender people from being transgender. In sum, this case falls squarely in the category of cases in which the degree and foreseeability of a "clear pattern" of disparate impact are at a maximum, and in which both "circumstantial and direct evidence" undermine the credibility of Defendants' asserted justifications. *Arlington Heights*, 429 U.S. at 564. For these reasons, Plaintiffs have shown purposeful discrimination, and that the challenged laws fail under both heightened scrutiny and rational basis review. *Adams*, 57 F.4th at 810; *Eknes-Tucker*, 80 F.4th at 1229-30.

Respectfully submitted this 3rd day of January, 2024.

*/s/ Chris Erchull*
Counsel for Plaintiff

**SOUTHERN LEGAL COUNSEL**

*/s/ Simone Chriss*
**Simone Chriss,** Florida Bar No. 124062
**Chelsea Dunn,** Florida Bar No. 1013541
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**LOWENSTEIN SANDLER LLP**

**Thomas E. Redburn, Jr.***
New York Bar No. 5822036
**Maya Ginsburg***
New York Bar No. 5128152
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
tredburn@lowenstein.com
mginsburg@lowenstein.com

**GLBTQ LEGAL ADVOCATES & DEFENDERS**

*/s/ Chris Erchull*
**Jennifer Levi***
**Chris Erchull***
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
cerchull@glad.org

7

**HUMAN RIGHTS CAMPAIGN FOUNDATION**

**Cynthia Cheng-Wun Weaver*** NY No. 5091848
**Jason Starr*** NY No. 5005194
**Ami Patel*** CA No. 325647
1640 Rhode Island Avenue NW
Washington, D.C. 20036
(202) 993-4180
Cynthia.Weaver@hrc.org
Jason.Starr@hrc.org
Ami.Patel@hrc.org

**NATIONAL CENTER FOR LESBIAN RIGHTS**

**Christopher F. Stoll***
CA Bar No. 179046
**Kelly Jo Popkin***
NY Bar No. 5698220
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Tel. 415-365-1320
cstoll@nclrights.org
kpopkin@nclrights.org

*\* Admitted by pro hac vice*

**Counsel for Plaintiffs**

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), the undersigned counsel certifies that, according to Microsoft Word, the word-processing system used to prepare this Motion, there are 1,485 total words contained within the Motion.

*/s/ Chris Erchull*
**Chris Erchull**

## CERTIFICATE OF SERVICE

I hereby certify that, on January 3, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Chris Erchull*
**Chris Erchull**
Counsel for Plaintiffs
