IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JANE DOE, et al.,

     Plaintiffs,

v.                                 Case No. 4:23-cv-00114-RH-MAF

JOSEPH A. LAPADO, et al.,

     Defendants.

_____/

**THE STATE'S POST-TRIAL BRIEF**

The State responds to Plaintiffs' three points in their post-trial brief. Doc.218. They fail in their attempt to lower the intentional-discrimination bar.

*Point 1: "under the disparate impact doctrine, Plaintiffs need not prove an improper purpose to discriminate was the sole or even primary motivation behind a challenged policy."* Doc.218 at 1. That's true as far as it goes. But discriminatory intent "is not just another competing consideration." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). Plaintiffs must still show that discriminatory intent was a "motivating factor" behind a governmental action, *id.*, where government officials "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

The inquiry is not nothing. After all, with an intentional-discrimination claim, a plaintiff is alleging that citizens' elected representatives took discriminatory actions for discriminatory purposes. This is a serious charge, and it shouldn't be taken lightly or be grounded on less-than-solid evidence. *Brnovich v. DNC*, 141 S. Ct. 2321, 2348-50 (2021). As Chief Justice Marshall put it, holding that government officials had improper intent is "a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case." *Fletcher v. Peck*, 10 U.S. 87, 128 (1810). This isn't a doubtful case—especially with the presumption of good faith that's afforded to governmental action. *Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018); *League of Women Voters of Fla. v. Fla. Sec'y of State*, 66 F.4th 905, 923 (11th Cir. 2023).

*Point 2: "Plaintiffs need not show that decisionmakers harbored subjective animosity toward the targeted group."* Doc.218 at 2. Again, that's true as far as it goes. *E.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269-70 (1993). But it's not true that "the greater and more foreseeable the adverse disparate impact on a particular group, the more likely purposeful discrimination played a role" in the governmental action. Doc.218 at 2-3.

Foreseeability is but one factor in the multi-factor *Arlington Heights* analysis. And discriminatory intent "implies more than intent as volition or intent as awareness of consequences." *Feeney*, 442 U.S. at 279. The standard example is abortion regulations: it's obvious that the regulations are going to affect women, and only women. But the foreseeability of their consequences doesn't mean that abortion regulations were passed with intentional discrimination. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228,

2245-46 (2022); *Bray*, 506 U.S. at 273-74. "[I]t cannot be denied that there are common and respectable reasons for opposing" abortion, "other than hatred of, or condescension toward (or indeed any view at all concerning), women as a class." *Bray*, 506 U.S. at 270.

So too here. There are common and respectable reasons for regulating gender-dysphoria treatments. Indeed, the Eleventh Circuit (and the Sixth Circuit) found that there are plenty of reasons to do so. *Eknes-Tucker v. Governor of the State of Ala.*, 80 F.4th 1205, 1225 (11th Cir. 2023); *L.W. v. Skrmetti*, 73 F.4th 408, 416 (6th Cir. 2023). Believing that better medical standards should be in place for a relatively new medical condition doesn't amount to intentional discrimination.

Asserting a nondiscriminatory justification for a State action doesn't "subvert" the intentional-discrimination analysis or any doctrine. Doc.218 at 3-4. Assessing nondiscriminatory justifications is part of the constitutional analysis, just as it was part of the analysis for abortion regulations, *Dobbs*, 142 S. Ct. at 2284, and for voter-ID laws, *Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1319, 1322 (11th Cir. 2021).

*Point 3: "neither 'purposeful discrimination' nor even animus equates to subjective hatred or animosity, nor need they reflect subjective malice or self-conscious desire to harm."* Doc.218 at 4. True as far as it goes. It's also true that benign motivations have often justified sex-based discrimination, *Frontiero v. Richardson*, 411 U.S. 677, 684 (1973)—although gender-dysphoria regulations aren't sex-based regulations, *Eknes-Tucker*, 80 F.4th at 1227-28.

3

But again, discriminatory intent "implies more than intent as volition or intent as awareness of consequences." *Feeney*, 442 U.S. at 279. While outright animosity isn't required, discriminatory intent here "does demand" at the very "least a purpose that focuses upon" transgender individuals "*by reason of their*" transgender status. *Bray*, 506 U.S. at 270 (emphasis in the original).

Plaintiffs haven't proven that. They haven't proven that was true for the majority of the Florida Board of Medicine or the Florida Board of Osteopathic Medicine or the Florida House of Representatives or the Florida Senate—or even that the Governor and Surgeon General took actions "because of" and not "merely in spite of" the governmental actions' effects on transgender individuals. *Feeney*, 442 U.S. at 279.

Instead, the concern was over treatments for a medical condition, not over a group of people—and a medical condition that only affects a subset of a group of people. After all, not all transgender individuals have gender dysphoria. The concern was perfectly rational, as the Eleventh Circuit already found in *Eknes-Tucker*. Plaintiffs' unsubstantiated inferences and guesstimations of a malicious statewide conspiracy against transgender individuals don't amount to anything, let alone intentional discrimination. The high bar for intentional discrimination demands more.

Dated: January 14, 2024                    Respectfully submitted by:

**Ashley Moody**                           /s/ Mohammad O. Jazil
ATTORNEY GENERAL                           Mohammad O. Jazil (FBN 72556)
                                           Gary V. Perko (FBN 855898)
**James H. Percival** (FBN 1016188)        Michael Beato (FBN 1017715)
CHIEF OF STAFF                             mjazil@holtzmanvogel.com
OFFICE OF THE ATTORNEY GENERAL             gperko@holtzmanvogel.com
The Capitol, PL-01                         mbeato@holtzmanvogel.com
Tallahassee, Florida 32399-1050            HOLTZMAN VOGEL BARAN
(850) 414-3300                             TORCHINSKY & JOSEFIAK PLLC
(850) 410-2672 (fax)                       119 S. Monroe St., Suite 500
James.Percival@myfloridalegal.com          Tallahassee, FL 32301
                                           (850) 270-5938

*Counsel for the Surgeon General, the*
*Department of Health, and State Attorney*  *Counsel for the Surgeon General, the*
*Gladson*                                   *Department of Health, the Boards of Medicine,*
                                            *and the individual Board Members*

## Certificate of Compliance

I certify that this document is 878 words, which is under the 1,500-word limit imposed by this Court. Doc.217. I also certify that this document complies with the typeface and formatting requirements in Local Rule 5.1.

Dated: January 14, 2024                    /s/ Mohammad O. Jazil
                                           Mohammad O. Jazil (FBN 72556)

## Certificate of Service

I certify that on January 14, 2024, this document was uploaded to CM/ECF, which sends the document to all counsel of record.

Dated: January 14, 2024                    /s/ Mohammad O. Jazil
                                           Mohammad O. Jazil (FBN 72556)