IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JANE DOE, et al.,

     Plaintiffs,

v.                           Case No. 4:23-cv-114-RH-MAF

JOSEPH A. LADAPO, et al.,

     Defendants.

_____/

### THE STATE'S TIME-SENSITIVE MOTION TO STAY

Defendants, Surgeon General Ladapo, State Attorney Gladson, and Board Members Scot Ackerman, Nicholas Romanello, Matthew Benson, Gregory Coffman, Amy Derick, David Diamond, Patrick Hunter, Luz Marina Pages, Hector Vila, Michael Wasylik, Zachariah Zachariah, Nicole Justice, Watson Ducatel, Tiffany Sizemore Di Pietro, Gregory Williams, Monica Mortensen, Valerie Jackson, Chris Creegan, and William Kirsh—the State—move under Federal Rule of Civil Procedure 62 for this Court to stay its final order and judgment, Docs.223, 224, pending appeal. *See also* Fed. R. App. P. 8(a)(1) (requiring movant to first seek a stay from the district court).

1

Given the concerns specific to the wide availability of puberty blockers and cross-sex hormones, and the need for the circuit court to also consider these issues on an expedited basis, the State seeks a quick resolution of this motion.[1]

In the accompanying memorandum, page numbers refer to the upper-right, blue page numbers of docketed documents, not the bottom-center, black ones. If a referenced exhibit or transcript comes from the *Dekker v. Weida* case, the exhibit or transcript citation will contain "*Dekker.*" Otherwise, referenced exhibits and transcripts come from this case.

---

[1] The State notes that the timing of this motion was dictated by the time needed to confer with the various defendants in this case.

Dated: June 18, 2024

Respectfully submitted by:

Ashley Moody
Attorney General

/s/ James H. Percival
James H. Percival (FBN 1016188)
Chief of Staff
OFFICE OF THE ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the Surgeon General, the
Department of Health, and State
Attorney Gladson*

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St., Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com

*Counsel for the Surgeon General, the Department
of Health, and the Board Members*

## LOCAL RULES CERTIFICATION

I certify that this motion complies with this Court's word count, spacing, and formatting requirements. I also certify that I conferred with Plaintiffs' counsel before filing this motion; Plaintiffs oppose this motion.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that on June 18, 2024, this motion was filed using the Court's CM/ECF, which will serve a copy to all counsel of record.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## Memorandum

The State asks for a stay of this Court's order until the resolution of an appeal in this case. Four factors are relevant for such a motion: (1) likelihood of success on the merits, (2) irreparable harm absent a stay, (3) harm to others, including Plaintiffs, and (4) the public interest. *See League of Women Voters of Fla. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022). With respect, and despite the final order and judgment, the State maintains that all four factors favor a stay. That's especially so because the underlying issues concern a health-related matter: the appropriate regulation of treatments for gender dysphoria, namely the availability and use of puberty blockers and cross-sex hormones. The State should choose the appropriate line between no restrictions on certain treatments and an outright ban on the treatments. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022).

## I.    Success on the Merits.

**A.** The State maintains that *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), controls and that it got the issues right. In the final analysis, rational-basis review applies: "*Eknes-Tucker* said, based on a different record, that Alabama's analogous ban survived rational-basis scrutiny. This strongly suggests—if it does not mandate a holding—that the Florida ban also survives rational-basis scrutiny." Doc.223 at 72. Because *Eknes-Tucker*'s holding is binding, this Court should stay the final order and judgment, and let the appellate court assess whether Florida's actions rise to the level of that rare, rational-basis case where the government should lose.

**B.** At the very least, all must agree that the legal issues aren't clearcut. They have generated significant debate among the various circuit courts of appeal. Doc.223 at 25-26 (collecting cases). And, even in the Eleventh Circuit, for several months now, there's been a petition for en-banc review pending in *Eknes-Tucker*. Doc.223 at 27. When, as here, the legal issues "aren't 'entirely clearcut,'" a district court should stay its decision. *LWV*, 32 F.4th at 1374 (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring in grant of applications for stays)). Or, as another formulation of this factor puts it, a stay's appropriate where there's a "substantial case" on the merits. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (citing *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)); *see also Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (the party seeking a stay need only present a "reasonable probability," "fair prospect," and "substantial case on the merits," or raise "serious legal questions").

**C.** Plaintiffs may respond that *Eknes-Tucker* allows for what this Court did: striking down state provisions because animus against transgender individuals fueled the adoption of the provision. The State disagrees. It maintains that this Court erred in its conception and application of the presumption of good faith.

The Supreme Court recently explained that the good-faith presumption creates an evidentiary "inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions." *Alexander v. S.C. State Conference of the NAACP*, 144 S. Ct. 1221, 1235-36 (2024). So when presented with two possible explanations for a decision, one of which is a discriminatory purpose fueled by

5

animus, the presumption of good faith requires that this Court choose the other explanation. That didn't happen here. *Compare* Doc.223 at 42-47 (animus), *with* Doc.223 at 47-49 (other explanation). Instead, this Court focused on the statements of a few government officials to infer animus and discriminatory purpose on the part of multiple collegial bodies; and this Court focused on the language in forms that can be explained just as easily as a group-writing exercise (where clarity and readability often give way to word salad) rather than animus against transgender individuals or some other discriminatory purpose. *See United States v. O'Brien*, 391 U.S. 367, 384 (1968); *Brnovich v. DNC*, 594 U.S. 647, 689 (2021); *LWV*, 32 F.4th at 1373-74.

This misapplication of an evidentiary inference was in error. Given the evidence, no animus or discriminatory purpose should have been found.

## II. Irreparable Harm to the State.

**A.** The next factor favors the State as well. The "State 'clearly has a legitimate interest in the continued enforceability of its own'" laws. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) (quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). "[A]ny time [the] State is enjoined by a court from effectuating" its laws, "it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *see also Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018) (same).

**B.** The State is also "harm[ed] from its inability" to "further the public-health considerations undergirding" its laws; here, that public-health interest includes the need "to avoid irreversible health risks to its" citizens. *L.W. v. Skrmetti*, 73 F.4th 408, 421 (6th Cir. 2023). Prior to entry of the final order and judgment, the enjoined laws applied to everyone in the State, except for a few who established that they were entitled to relief after a hearing before this Court. *See* Doc.90 (granting preliminary injunction); Doc.151 (denying class-wide preliminary injunction). Now that status quo has been upended through class-wide relief. This is particularly true for gender-dysphoric minors. There's no guarantee that all members of the class will receive the kind of multidisciplinary care needed to properly diagnose and then treat gender dysphoria (even if Plaintiffs' take on the safety and efficacy of puberty blockers and cross-sex hormones is accepted).

This Court raised that very concern with Plaintiffs' expert, Dr. Shumer, during the *Dekker* trial. Dr. Shumer works at the University of Michigan Children's Hospital, so this Court asked:

> The Court:   The concern is the quality of care that you are providing with the team [at Michigan] you've described may be different from the quality of care that someone gets from a single doctor in a single city in Florida where there is not a major medical research institution, and so that's a concern.
>
> If care is properly provided in the University of Michigan setting or University of Florida setting, how does that compare to what may be provided in an individual city by an individual provider?

*Dekker* Tr.288:4-20. Dr. Shumer didn't appear to give a specific and concrete answer, as applied to Florida patients:

Dr. Shumer: Yeah. You know, I would say that it's—I think it's different when you are thinking about pediatrics versus adult. So I think, in general, most solo practice pediatricians, for example, aren't deciding that they are going to start providing gender-affirming care, because they recognize that that care may be better provided in more of a multidisciplinary center. On the other hand,  there's more, you know, family practice docs or internal medicine docs that are providing care to adult trans people sort of across the country.

So, for example, in Michigan, we have patients coming from all corners of the state. Just like Florida, it's—we've got two peninsulas, not just one, but people coming from, you know, the Upper Peninsula traveling six hours to Ann Arbor for care. Virtual visits have made that a little easier for follow-up.

But I would say, if not all, the vast majority of adolescents receiving gender-affirming care are getting that care at—at not necessarily universities, but centers with experience and centers of excellence.

You know, so I think that—I agree with you that, you know, if I had—if I had a transgender child, I would want to them to be seen by someone that was an expert. And, you know, fortunately, in—I would also not say that that's not so different than other endocrine problems, right. So if I had a child with hypophosphatemic rickets and I lived in Florida, I might travel to Gainesville for care. Because that's a rare condition, I want to see an expert pediatric endocrinologist.

And so I think that is an important topic, but I also think that most kids are getting seen by people that are in this field because they are passionate about it, but they have also taken the time to really become experts in providing the care.

*Dekker* Tr.288:4 – 290:1. In fact, Dr. Shumer's knowledge of Florida healthcare appeared limited to "interface[s] with colleagues at the University of Florida," the home of a multidisciplinary team. *Dekker* Tr.290:5-14. He didn't recall, for example, working with any qualified, Tallahassee-based colleagues. *Dekker* Tr.290:5-14. Nothing in the

record fills the gap—nothing shows that the kind of multidisciplinary care needed to diagnose and treat gender dysphoria exists in all parts of the State.

In sum, the record is devoid of evidence that some, many, or even most gender-dysphoric patients, particularly minors, in Florida have access to, or receive care from multidisciplinary teams. The State's inability to protect these minors, even accepting Plaintiffs' approach to the use of puberty blockers and cross-sex hormones, causes irreparable harm to the State and its citizens.

### III. & IV.    Balance of the Equities and the Public Interest.

The remaining factors overlap with the irreparable harm discussion above. They too favor the State. The State maintains that low-quality evidence supports the efficacy of puberty blockers and cross-sex hormones to treat gender dysphoria. This Court has said that the clinical experience shared by Plaintiffs' experts shows that the treatments are efficacious when administered through experienced practitioners. But, even then, there's no guarantee that these experienced practitioners will serve as the gatekeepers for such treatment. The testimony of de-transitioners, including Zoey Hawes, who testified before this Court, makes that clear. *Dekker* PI Tr.41:11 – 50:3. The record further shows that hypnotists and interns with a few hours of training are making diagnoses. *Dekker* Tr.646:6 – 647:5 (hypnotist); *Dekker* Tr.676:8 – 679:6 (intern).

Under the circumstances, letting the State's laws stand pending an appeal is more appropriate. The State (together with others around the world) is grappling with the "uncertainty regarding benefits, recent surges in use, and irreversible effects" of puberty

blockers and cross-sex hormones. *Eknes-Tucker*, 80 F.4th at 1225. Whether the State chooses to use a hammer or a scalpel to address the matter is a matter for the State. *Id.* at 1231. And if the State erred in its choice of tool, then waiting for further guidance from the appellate court(s) seems prudent given the circuit splits and pending en-banc petition before the Eleventh Circuit.

*       *       *

This Court should grant the State's motion to stay.

Dated: June 18, 2024

Ashley Moody
Attorney General

/s/ James H. Percival
James H. Percival (FBN 1016188)
Chief of Staff
OFFICE OF THE ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the Surgeon General, the
Department of Health, and State
Attorney Gladson*

Respectfully submitted by:

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St., Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com

*Counsel for the Surgeon General, the Department
of Health, and the Board Members*

## LOCAL RULES CERTIFICATION

I certify that this motion complies with this Court's word count, spacing, and formatting requirements. I also certify that I conferred with Plaintiffs' counsel before filing this motion; Plaintiffs oppose this motion.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that on June 18, 2024, this motion was filed using the Court's CM/ECF, which will serve a copy to all counsel of record.

/s/ Mohammad O. Jazil
Mohammad O. Jazil