IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JANE DOE et al.,

    Plaintiffs,

v.

JOSEPH A. LADAPO et al.,

    Defendants.

Civil No. 4 23-cv-00114-RH-MAF

## OPPOSITION TO THE STATE'S TIME-SENSITIVE MOTION TO STAY

The Court should deny Defendants' motion. "A stay is not a matter of right," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (quotation marks and citations omitted). Defendants' expression of disagreement with this Court's decision and declaration of their intent to appeal—which is all its motion amounts to—are not enough to warrant entry of a stay. To the contrary, to evaluate whether to grant a stay pending appeal from an order granting a permanent injunction, the Court considers the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (applying the same test).

Defendants bear the burden of showing that the circumstances justify the stay, and failure to show any of the four factors is fatal to a request for a stay. *See Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021). Because these factors substantially overlap with the factors this Court applies in deciding whether to grant injunctive relief, stays pending appeal "are disfavored and granted only in exceptional circumstances." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). Here, this Court should find that Defendants are not entitled to a stay of this Court's Order.

1. **This Court's Decision is Correct on the Facts and the Law.**

Defendants have not made *any* showing that they are likely to succeed on the merits of their appeal. Defendants' motion relies on the same arguments raised at trial and in other stages of the litigation, insisting yet again that Plaintiffs have not proven that Defendants acted unconstitutionally in barring access to gender transition medical care for transgender adolescents and imposing barriers to medical care for transgender adults.

This Court's Order on the Merits (ECF No. 223) includes extensive findings of fact that are not clearly erroneous or even disputed by Defendants in their

Motion to Stay. *Doe v. Ladapo*, No. 4:23-cv-114-RH-MAF, 2024 WL 2947123 (N.D. Fla. June 11, 2024). Defendants have not even attempted to show a likelihood that these findings will be reversed on appeal.

This Court's decision is one of two district court decisions that have concluded, based on a full record following a trial on the merits, that banning or restricting gender-affirming care violates federal constitutional guarantees. *Id.* at *39-40; *Brandt v. Rutledge*, 677 F. Supp. 3d 877, 922 (E.D. Ark. 2023) (entering judgment for plaintiffs and issuing permanent injunction on Arkansas ban on adolescent gender transition medical care). Defendants rely on court decisions reversing preliminary injunctions (ECF 226, at 4-5), but those decisions were not based on a full record and neither the laws at issue nor the claims are identical to the instant case. *See Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205 (11th Cir. 2023) (reversing preliminary injunction); *L.W. v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023) (same). And Defendants ignore the appellate decisions upholding similar preliminary injunctions. *Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) (affirming preliminary injunction); *Labrador v. Poe*, No. 24-142 (9th Cir. Jan. 30, 2024), declining to stay 1:23-cv-269, 2023 U.S. Dist. LEXIS 229332 (D. Idaho Dec. 26, 2023), *rev'd in part*, 144 S.Ct. 921 (2024).[1] Defendants have failed to

---

[1] As noted in this Court's order (ECF 223, at 25-26), the Supreme Court only stayed the application of the injunction to nonparties in *Poe*; the injunction remained in

show any legal error in the Court's carefully-reasoned merits decision.

This Court faithfully applied Supreme Court and Eleventh Circuit precedent to reach its legal conclusions before applying heightened scrutiny, including accounting for both possibilities: that the Eleventh Circuit vacates its decision in *Eknes-Tucker* or *Eknes-Tucker* remains the law of the Eleventh Circuit. *Doe*, 2024 WL 2947123 at *11 ("Addressing the issues both ways—both as will be proper if *Eknes-Tucker* remains the law of the circuit and as will be proper if the opinion is vacated—may allow the circuit to address this case when it gets there without a remand and the attendant further delay."). The decision also relies on other Eleventh Circuit precedent, including *Lange v. Houston County*, 101 F.4th 793 (11th Cir. 2024) and *Glenn v. Brumby*, 663 F.3d 1313 (11th Cir. 2011), to conclude that the prohibitions discriminate based on gender nonconformity—including transgender status. *Doe*, 2024 WL 2947123 at *13-14.

Moreover, as Defendants acknowledge, the *Eknes-Tucker* decision states that the regulation of gender transition medical care would "trigger heightened scrutiny" if "the regulation is a pretext for invidious discrimination against [transgender] individuals . . . ." 80 F.4th at 1229-30. This Court found "substantial evidence of animus in the adoption of the statute and rules at issue here." *Doe,*

---

place for the plaintiffs themselves. And the *Poe* plaintiffs did not obtain class certification like Plaintiffs did in the instant case (ECF 166).

2024 WL 2947123 at *15. Ample findings of fact support this conclusion. *Id.* at *17-21 ("This record includes overwhelming evidence that the House sponsors and a significant number of other House members were motivated by anti-transgender animus."); *id.* at *21-24 ("[T]he forms were motivated by anti-transgender animus. The same animus motivated all the Boards' transgender rules."). This Court analyzed the Defendants' actions under the traditional standard for determining whether state action is motivated by invidious discrimination. *Id.* at *26-28. ("[T]o the extent that the *Arlington Heights* factors are relevant, they favor the plaintiffs.").

This Court appropriately applied heightened scrutiny and determined that Defendants were unable to demonstrate that Florida's transgender status classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives. *Id.* at *28-37. Defendants do not argue that this Court's heightened or intermediate scrutiny analysis was incorrect, rather their only argument is that rational basis review should apply. (ECF 226, at 4). Other than disagreeing with the Court's conclusion, Defendants have not shown that the Court failed to follow or apply binding precedent nor otherwise committed legal error. This Court's decision is solidly supported by the robust factual findings and the law. Therefore, Defendants have failed to show that they are likely to succeed on

5

the merits of their appeal.

**2. A Stay Would Not Protect the Defendants from Irreparable Injury.**

Defendants also fail to meet their burden to show that they would suffer irreparable injury absent a stay. The State has no cognizable injury when it is enjoined from enforcing a law in violation of the constitutionally protected rights of its citizens. *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010). Moreover, the State retains the power to regulate medical care, *so long as* the manner of regulation is not rooted in animus or otherwise unconstitutional. *Doe*, 2024 WL 2947123, at *5 ("The State of Florida can regulate as needed but cannot flatly deny transgender individuals safe and effective medical treatment—treatment with medications routinely provided to others with the state's full approval so long as the purpose is not to support the patient's transgender identity.")

Defendants also argue that the State is harmed by its inability to further the public health interest of avoiding "irreversible health risks to its" citizens. (ECF 226, at 7 (*quoting L.W.,* 73 F.4th at 421.)). Their showing on this point, however, is woefully lacking. As this Court noted, Defendants were unable to find a single patient adversely affected by the treatments at issue here; nor has the Board of Medicine received a single complaint about gender transition medical care. *Doe,* 2024 WL 2947123, at *25, 36. Surely, if there were any legitimate health risk to the citizens of Florida because of the provision of this care, it would be reflected

in the record. Defendants' claims of injury thus rest on the same unsubstantiated assertions of harm to transgender citizens (including the supposed lack of multidisciplianary teams to treat transgender youth) that the Court rejected after a plenary trial. There is no basis for granting a stay.

This Court issued a preliminary injunction in this matter on June 6, 2023, and since that time Defendants have been restricted in their enforcement of the ban on gender transition medical care for transgender adolescents. (ECF 90). Although this Order, unlike the earlier one, provides class-wide relief, the earlier order rested on the likely unconstitutionality of the law and, appropriately, the State did not endeavor to enforce the law between the time of its passage and the issuance of the permanent injunction, to the best of Plaintiffs' knowledge. Defendants do not argue that the preliminary injunction has caused any injury while it has been in place, nor did they move for a stay since the initial injunction issued over one year ago. They have not shown that this Court's permanent injunction causes a new type of harm.

### 3. The Plaintiff Classes Will be Seriously Injured if a Stay is Granted.

The Court found that an injunction was necessary to *prevent* Plaintiffs and class members from experiencing irreparable harm, determining that for many transgender people, including the class representative minor plaintiffs whose parents testified and the class representative adult plaintiff who testified, gender

7

transition medical treatment is necessary to treat the real and serious condition of gender dysphoria. *Doe,* 2024 WL 2947123, at *38. Further, the Court found that "[e]ven the defendants' expert Dr. Levine" agrees that medical treatment is indicated in appropriate circumstances. *Id.* at *7 (noting that Dr. Levine "would demand appropriate safeguards, as discussed below, but he would not ban the treatments").

All transgender people in Florida who need gender transition medical care, however, would be injured by a stay that results in the banning or restricting of essential treatments for these individuals. *See id.* at *7 ("The record includes testimony of well-qualified doctors who have treated thousands of transgender patients with GnRH agonists and cross-sex hormones over their careers and have achieved excellent results." And "denial of this treatment will cause needless suffering or a substantial number of patients and will increase anxiety, depression, and the risk of suicide."). Defendants have not met their burden to show otherwise.

**4. A Stay Would Not Serve the Public Interest.**

Lastly, the public does not have an interest in preventing transgender people from accessing medical care that they need. Nor does the public have an interest in the State's enforcement of an unconstitutional law. *Scott v. Roberts*, 612 F.3d at 1297. As this Court found, "[g]ender-affirming care causes no harm to others–no harm to individuals who do not receive the care." *Doe,* 2024 WL 2947123, at *29.

Defendants have made no showing to the contrary.

## **CONCLUSION**

For the reasons stated herein, the Defendants' motion should be denied.

Respectfully submitted this 26th day of June, 2024.

                                                  */s/ Simone Chriss*
                                                  Counsel for Plaintiffs

**SOUTHERN LEGAL COUNSEL**

*/s/ Simone Chriss*
**Simone Chriss,** Florida Bar No. 124062
**Chelsea Dunn,** Florida Bar No. 1013541
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**LOWENSTEIN SANDLER LLP**

**Thomas E. Redburn, Jr.\***
New York Bar No. 5822036
**Maya Ginsburg\***
New York Bar No. 5128152
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
tredburn@lowenstein.com
mginsburg@lowenstein.com

**GLBTQ LEGAL ADVOCATES & DEFENDERS**

*/s/ Chris Erchull*
**Jennifer Levi\***
**Chris Erchull\***
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
cerchull@glad.org

**HUMAN RIGHTS CAMPAIGN FOUNDATION**

**Cynthia Cheng-Wun Weaver*** NY No. 5091848
**Jason Starr*** NY No. 5005194
**Ami Patel*** CA No. 325647
1640 Rhode Island Avenue NW
Washington, D.C. 20036
(202) 993-4180
Cynthia.Weaver@hrc.org
Jason.Starr@hrc.org
Ami.Patel@hrc.org

**NATIONAL CENTER FOR LESBIAN RIGHTS**

**Christopher F. Stoll***
CA Bar No. 179046
**Kelly Jo Popkin***
NY Bar No. 5698220
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Tel. 415-365-1320
cstoll@nclrights.org
kpopkin@nclrights.org

*Admitted by pro hac vice*

***Counsel for Plaintiffs***

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Loc. R. 7.1(F), I certify this Response in Opposition to Defendants' Time-Sensitive Motion for Stay (ECF 226) contains 1,858 words, which includes headings, footnotes, and quotations, but does not include case style, signature block or Certificates of Word Count and Service.

*/s/ Simone Chriss*
**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Simone Chriss*
**Counsel for Plaintiffs**
